UNITED STATES, Appellee,

v.

Candido A. RIVERA, Technical
Sergeant, U.S. Air Force,
Appellant.

No. 52815.
ACM 24487.

U.S. Court of Military Appeals.

Nov. 10, 1986.
Certiorari Denied Feb. 23, 1987.
See 107 S.Ct. 1302.

For Appellant: *Eugene R. Fidell,* Es-
quire (argued); *Colonel Leo L. Sergi, Ma-
jor William H. Lamb* (on brief); *Captain
Raymond J. Hardy, Jr.,* USAFR.

For Appellee: *Captain Joseph S. Kistler*
(argued); *Colonel Kenneth R. Rengert* (on
brief); *Colonel Joe R. Lamport.*

*Opinion of the Court*
EVERETT, Chief Judge:

After appellant had entered mixed pleas,
a general court-martial with members con-

victed him of four sex-related offenses involving his adopted daughter; and he was sentenced to a dishonorable discharge, confinement for 12 years, and reduction to airman first class. The convening authority approved the results; and the Court of Military Review affirmed in an unpublished opinion. Thereafter, this Court granted review of this issue:

WHETHER, IN A CASE INVOLVING MIXED PLEAS, THE MILITARY JUDGE ERRED BY INFORMING THE MEMBERS OF THOSE OFFENSES TO WHICH APPELLANT HAD ENTERED PLEAS OF GUILTY AND THE FINDINGS THEREON PRIOR TO PRESENTATION OF EVIDENCE ON SEPARATE OFFENSES TO WHICH HE HAD PLED NOT GUILTY, AND BY ADMITTING EVIDENCE, OVER DEFENSE OBJECTION, CONCERNING THOSE OFFENSES TO WHICH APPELLANT HAD PLED GUILTY DURING THE HEARING ON FINDINGS ON SEPARATE OFFENSES TO WHICH HE HAD PLED NOT GUILTY.

I

Rivera was charged with carnal knowledge of his daughter, Raquel, on December 25, 1983; communicating indecent language to her on the same date; carnal knowledge with her during June 1982; and sodomy with her during November and December 1983, in violation of Articles 120, 134, and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934, and 925, respectively.

Upon being arraigned, the defense unsuccessfully moved to have the two December 25th offenses treated as multiplicious for findings. Then, after indicating that appellant planned to plead guilty to these two charges, defense counsel moved *in limine* "that the Charges and Specifications to which the accused intends to plead guilty along with any evidence relating to those specific charges not be provided to the court members until the sentencing phase of this trial." He argued that the charges were similar and the victim the same, so the risk was great that, in deliberating on the contested charges, the court members would be influenced prejudicially by the information received as to the uncontested offenses.

In response, trial counsel conceded that a stipulation of fact, which supported the anticipated guilty pleas and which addressed only the uncontested offenses, should not go before the members prior to deliberations on the other charges. Likewise, he recognized that government witnesses on the contested charges should not be asked at that stage any questions going "solely to evidence substantiating the offenses to which" it was anticipated the accused would "plead guilty." Nevertheless, the prosecutor contended that some of his evidence on the uncontested charges

has relevance to the remaining charges to which we anticipate the accused will plead not guilty. Therefore, the Government suggests that if that evidence is otherwise admissible toward the contested offenses that it should nevertheless be admitted even though it may also substantiate in part and parcel the accused's plea to the two charges to which he intends to plead guilty.

Additionally, trial counsel urged that, according to the case law, it was proper to advise the court members at the outset of *all* charges upon which the accused had been arraigned, and he offered a proposed instruction—previously judicially approved—to explain that situation to the members. Trial counsel contended that appropriate instructions to the members could limit the potential spill-over effects from such evidence, feared by the accused. Earlier, defense counsel had argued that there was no legitimate purpose to which the members could put this information prior to the sentencing stage; and trial counsel responded that, in this case, awareness of the uncontested offenses would explain to the members the otherwise-curious hiatus in time between the dates of the contested offenses and the dates when they were discovered and would make clear the circumstances of their discovery.

In reply, defense counsel reminded the judge that the contested offenses were closely related in nature to the uncontested ones. Therefore, he contended that, whatever the merit to trial counsel's argument, an unacceptably high risk existed that the court-martial members would reason improperly that, if Rivera pleaded guilty to some of these offenses, then he also must be guilty of the other, similar offenses.

Finally, the military judge ruled that he would advise the members of all the charged offenses and of the accused's pleas thereto but that he would not permit either the stipulation of fact in support of the uncontested offenses or a charge sheet containing those charges to be considered by them. In addition, he ruled as to anticipated testimony that if it "is admissible as to the other charged offenses under the military rules of evidence, I will allow those witnesses to testify." Of course, he also indicated that appropriate limiting instructions would be given as to the use to which the members could put all this information.

After Rivera had been arraigned and had entered the anticipated pleas, the members assembled. Consistent with the judge's ruling, they were not given copies of the charges to which Rivera had pleaded guilty. Instead, they received a copy—referred to as a "flimsy"—only of the contested charges which they were to decide. In addition, the military judge gave these preliminary instructions, again consistent with his announced intent:

You have before you a flimsy. A flimsy is not evidence, it is merely a statement of what the accused has been charged with. The accused has pled not guilty to those charges that appear before you and this case is based upon the charges and specifications that you have before you. As I said before, charges and specifications are simply written accusations of offenses and are not any evidence of the accused's guilt or of the allegations they contain.

I will advise you at this time that in a prior '39(a) Session which was held this morning, the accused pled guilty to two

other charges and specifications thereunder. In a moment I will advise you of what those were, however, I caution you with the following instruction and you must follow this instruction, it is vitally important. The accused pled guilty in this court and has been found guilty of Charge I and Charge III which do not appear before you. He pled not guilty to Charge II and the Additional Charge which does [sic] appear before you. Concerning the contested charges that do appear before you, no inference, none whatsoever, adverse to the accused may be drawn from his guilty plea. The guilty plea may not be considered in any way as evidence going to the contested charges.

Sergeant Rivera pled guilty to having carnal knowledge with his daughter on the 25th of December 1983. Sergeant Rivera also pled guilty to communicating to his daughter, Raquel Rivera, a child under the age of sixteen, certain indecent language. This also occurred on December 25th, 1983.

Please understand, ladies and gentlemen of the court, that is irrelevant to why you are here today. He has pled guilty; I've heard what he has to say, and I have found him guilty of those two offenses and at an appropriate time you will be required to consider those. But as to why we are here this morning as to guilt or innocence, you are only to look at the evidence presented to you as to those two charges. Because of what happened earlier you are not to consider that—do you all understand?

After selection of the court members but before they had heard any evidence, trial counsel sought in an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to establish the admissibility of prosecution exhibit 2—a note purportedly written by Rivera. This note, which formed the basis of the charge of communicating indecent language to which appellant already had pleaded guilty, read:

Raquel,

Since it's Christmas, you think I can get a "Freebie" from you? I love your Christmas gift. I'll wait till [sic] you finish your nails. I hope you say yes. I love you[

Dad

By "Freebie" I mean that normally I give you $30–$50 for your services, but since it's Christmas maybe you may give it to me free. Don't worry about your menustration [sic][

Love,

Dad

In an offer of proof in support of his motion, trial counsel indicated that the victim would testify that she had interpreted the phrase, "Normally I give you $30–$50 for your services," to refer to the contested charge of committing oral sodomy during November and December 1983. Thus, the prosecution argued that the note was admissible

> not for the purpose of substantiating Charge III to which the accused has pled and has been found guilty ... [b]ut rather ... as an admission by the accused pursuant to Military Rule of Evidence 801(d)(2), concerning the prior sexual activity of the accused and his daughter which is the substance for the allegations of the remaining contested charges.

"Alternatively"—and expressly as a "secondary" theory of admissibility—trial counsel contended that, based on the same proffer, the note was admissible under Mil.R. Evid. 404(b), Manual for Courts-Martial, United States, 1969 (Revised edition), "concerning other offenses and acts which have a tendency to prove intent, knowledge, plans, et cetera."

Objecting to admission of this note, defense counsel urged initially that, although the victim might draw the interpretation indicated by trial counsel, "the note on its face, the contents of that note, do not, by themselves, offer any kind of an admission on the part of the accused." As to admissibility under Mil.R.Evid. 404(b), the defense contended that the note would permit the members to draw the inference that, if Rivera had committed the offenses to which he already had pleaded guilty, then he probably acted in conformity therewith and committed the contested offenses, as well—a use of evidence specifically proscribed by Mil.R.Evid. 404(a). Moreover, counsel insisted that, even if it were admissible under one of the theories offered by the prosecution, the note nonetheless should be excluded under Mil.R.Evid. 403 as being substantially more prejudicial than probative. The military judge deferred ruling on the matter until he had heard the Government's witnesses; but, ultimately, he overruled the defense objection.

During the trial, Raquel testified that appellant had given her the note on Christmas Day, 1983, and that the handwriting was his. According to her, the reference to "$30–$50 for your services" was to the money he had paid her on the three occasions when she had performed fellatio on him in November and December 1983. Each time, he had solicited the act with a written note. On direct examination, Raquel did not testify about the sexual intercourse on Christmas Day 1983, to which appellant had pleaded guilty. However, by way of explaining how her father's activities had come to light, she indicated that, when her mother had confronted her with the note on the day after Christmas, she had told her mother about having had sexual intercourse with appellant the day before. Over the course of three resulting interviews with agents of the Office of Special Investigations (OSI), she had revealed the acts in November and December 1983 and in June 1982, which formed the basis of the contested offenses.

On cross-examination by the defense, Raquel conceded that she had been angry with her father and wanted to see him punished for the Christmas Day intercourse. Later, defense counsel argued that this anger had led her to fabricate the contested charges of intercourse in June 1982 and of oral sodomies in November and December 1982.

Raquel's mother also testified for the prosecution. She explained that she had

found the note on Christmas Day and had asked her husband why he had written it. According to her testimony, Rivera responded, "I don't know why I did it"; "admitted that he" had written it; and asked her "to forgive him." She then had informed the police of her suspicions.

While she was on the stand, the members sought to ask: "Did you leave the house for any amount of time on 25 Dec. 83?" The judge did not permit this question to be asked and instead gave this instruction:

As I have instructed you, what occurred on the 25th of December, the fact that the note was written, okay, which you have heard testimony to, that is the only thing that is pertinent. If there is something in the 25th of December, vis-a-vis the note, you can clarify it, Colonel Robson, in time.

With this testimony, trial counsel rested the Government's case. Defense counsel offered no evidence. Before submitting the case to the members, the military judge discussed with counsel the need for limiting instructions on the use of the note. Defense counsel confirmed that the defense did not seek—and specifically did not want—such an instruction.

Consistent with the Government's announced purpose, assistant trial counsel made this reference to the note in closing argument:

Now, if that [Raquel's testimony] were all there was, if that were all of the testimony, there might still be a seed of doubt in your mind. The reason for that seed of doubt would be just the testimony of a young girl, but there's more than just her testimony and that something else is the note. In this case to paraphrase a parable, or a chinese proverb, this note is worth a thousand witnesses because the note is a note provided by the defendant, written by him, and specifically refers to sodomy that occurred in November and December 1983. The reference is by means of the term "services," references to services to which Raquel was paid thirty to fifty dollars. As you recall, Raquel specifically mentioned that after the sodomy in November and December of 1983, she was paid some monies and the note specifically refers to that. If there is any doubt in you[r] mind as to her credibility at this point, it should be dissolved by that fact; by that unsolicited note.

Having offered no evidence to contradict the charges, the defense relied entirely on a claimed prosecution failure to prove every element of the alleged offenses beyond a reasonable doubt. The linchpin of that position is clear in this portion of defense counsel's closing argument:

It is the defense's position in this particular case, contrary to what the Government has suggested, that they have not met their burden as to each and every element as to the two contested offenses. And in support of that, the defense would cite you to the testimony as well of Raquel Rivera. Certainly, the thrust of this case, the guilt or innocence aspect, turns very much so on the testimony of Raquel Rivera and the credibility of Raquel Rivera. It is quite evident from the evidence, if you believe Raquel Rivera's testimony here today, that a conviction would more than likely follow on these charges. However, the Government, as they have pointed out, certain indications as to why you should believe her testimony, the defense would cite other factors to be considered as well in evaluating the overall thrust of Raquel's testimony.

\* \* \* \* \* \*

Now, an additional matter to consider would be a possible motive for Raquel to misrepresent these facts. By her testimony she was in fact upset at the offense to which Sergeant Rivera has already pled guilty. Based upon that and subsequent to, over a period of time, she began relating that other things had happened. Certainly then, the interpretation she gave of the particular note in question is, in fact, self-serving, and she indicated quite plainly that she was very angry with her father and wanted to see him punished....

In closing, members of the court, as I have stated, the task ahead of you is enormous. The bulk of that regards determining the credibility of the child witness, Raquel Rivera. The defense would suggest that her credibility, her believability, is not as clear-cut as the Government would contend.

Subsequently, the military judge gave this instruction to the members concerning Rivera's guilty pleas:

I cannot emphasize any more strongly than I have, but I will reiterate once again, the accused pled guilty to Charge I, the charge of carnal knowledge with his daughter on the 25th of December, and he pled guilty to Charge III, which is communicating in writing indecent language to his daughter on the 25th of December. Those are not to be weighed by you in any way in your duty to determine guilt or innocence regarding the two remaining charges. I hope that is clear and I'll expect you to totally follow that instruction as with the rest of them.

In focusing the members' attention on the real issue in the case, the military judge delivered this instruction on the evidence:

In determining the believability of witnesses you must consider each witness' intelligence, ability to observe, act and remember, sincerity, conduct in court, friendships and prejudices, and their character for truthfulness. You must also consider the extent the witness was either supported or contradicted by other evidence, the relationship this witness may have with either side, the circumstances under which the witness testified, and how the witness might be affected by the verdict.

Neither party objected to the instructions given or requested additional instructions.

## II

We have recited the trial proceedings in detail in order to present fairly the rather unusual circumstances relevant to the granted issue—whether the judge erred in apprising the members of the offenses to which appellant had already pleaded guilty and admitting into evidence the note which was the corpus delicti of one of those offenses.

## A

■ Before the Uniform Code of Military Justice was amended by the Military Justice Act, Pub.L.No. 90–632, 82 Stat. 1335 (1968), there were no military judges; law officers sat only in general courts-martial and not in special courts; no procedure existed for pretrial hearings before a military judge; and there was no authority for a military judge to enter a finding of guilty based on a guilty plea. Therefore, the court-martial members entered findings on all the charges against an accused, regardless of his plea. Under such conditions there simply was no way to preclude court members from knowing that an accused who pleaded not guilty to some of the charges before them had pleaded guilty to others.

As a result of the statutory changes made in 1968, this situation no longer exists. Now a military judge can arraign an accused before the members have assembled. See Art. 39(a). At that time, the judge may enter findings of guilty as to any offenses to which the accused has entered guilty pleas. Art. 45(b), UCMJ, 10 U.S.C. § 845(b). Thus, it is entirely feasible for the members to try contested charges without being informed of other pending charges or of guilty pleas that have been entered thereto.

Both at trial and on appeal, the defense has forcefully argued that no useful purpose is served by allowing the court members to be informed of offenses as to which, earlier in the trial, the military judge has entered findings of guilty on the basis of the accused's guilty pleas. Arguing that to provide such information gratuitously unnecessarily prejudices an accused, appellate defense counsel state in their brief:

Permitting the members of a court-martial to be advised of all the charges and mixed pleas prior to the hearing and entry of findings on the merits of the con-

tested charges is seriously prejudicial because it erodes the presumption of innocence as to offenses the accused wishes to contest. Such a procedure clearly, seriously and *needlessly* undermines both the presumption of innocence and the reasonable doubt standard of proof, each of which is vital to the fair administration of justice.

In support of this position, the defense cites *United States v. Nixon*, 15 M.J. 1028, 1030–31 (A.C.M.R.), *pet. denied*, 17 M.J. 183 (1983), where the Court of Military Review observed:

[W]e believe that the practice of informing court members of the existence of a charged offense, and of a guilty plea and a finding of guilty thereon prior to presentation of evidence on another charge to which an accused has pleaded not guilty is an anachronism. We urge military judges to discontinue the practice in courts-martial.... No useful purpose is served by the continuation of such practice which merely provides a fertile area for assertion of error on appeal. The better course for a trial judge faced with pleas of both guilty and not guilty would be to delay informing the members of the guilty plea and finding until the sentencing portion when such knowledge is necessary to perform the sentencing function.

(Footnote omitted.)

The defense properly emphasizes that in trials by courts-martial every effort is made to assure that an accused will not be found guilty of one offense merely because he is guilty of other crimes. Thus, Mil.R. Evid. 404(b) provides that evidence of other misconduct is inadmissible "to prove the character of a person in order to show that the person acted in conformity therewith." Likewise, this Court has emphasized that "admissions implicit in a plea of guilty to one offense cannot be used as evidence to support the findings of guilty of an essential element of a separate and different offense." *United States v. Wahnon*, 1 M.J. 144, 145 (C.M.A.1975), quoting from *United States v. Caszatt*, 11 U.S.C.M.A.

705, 706, 29 C.M.R. 521, 522 (1960). Indeed, it appears that a plea of guilty to another offense can be considered only when that other offense is lesser-included within an offense alleged by the same specification as to which the plea is being offered in evidence. *See* R.C.M. 920(e), Discussion (3d para.), Manual for Courts-Martial, United States, 1984.

Perhaps our prohibition against use in evidence of pleas of guilty is too rigorous and deserves reexamination. Certainly, it seems incongruous that, if evidence of other misconduct qualifies for admission under one of the exceptions contained in Mil.R. Evid. 404(b), the Government nonetheless is precluded from proving that the accused has pleaded guilty to committing such misconduct. However, so long as this prohibition exists, it would be absurd to exclude evidence of a guilty plea and yet allow the court members to be advised by the military judge that the guilty plea has been entered. Moreover, if we were to allow admissibility of guilty pleas to other closely related offenses, the existence of those pleas should be brought before the court members during the regular presentation of the evidence and with suitable instructions—not placed before them by the judge at the beginning of trial.

The dangers in allowing the factfinder to receive information about pleas of guilty to unrelated charges is especially great in courts-martial, because military law is very liberal in allowing the joinder of charges. Thus, an accused who pleads guilty to one charge would run the risk that court members will draw an adverse inference of his guilt as to another charge which he is contesting and which is completely unrelated.

Conceivably, an accused may himself desire to bring before the court members the fact that he has pleaded guilty to charges unrelated to those which they are trying. Perhaps his defense counsel wishes to argue that the accused was perfectly willing to plead guilty to the crimes of which he, in fact, was guilty, but that he has pleaded not guilty to the remaining charges be-

cause he is innocent thereof. Perhaps his counsel fears that, if information about the guilty plea is not revealed until the time of presentencing proceedings, the court members will feel that they have been duped and, in resentment, will adjudge a more severe sentence. However, a military judge certainly should not presume that an accused is willing to have this potentially damaging information as to a guilty plea brought to the members' attention unless, in fact, the accused or his counsel has given some specific indication to this effect.

The Manual for Courts-Martial, United States, 1984, which took effect after trial of appellant's case, takes a similar position. In the Discussion of R.C.M. 910(g), military judges are admonished:

If the accused has pleaded guilty to some specifications but not others, the military judge should consider, and solicit the views of the parties, whether to inform the members of the offenses to which the accused has pleaded guilty. It is ordinarily appropriate to defer informing the members of the specifications to which the accused has pleaded guilty until after findings on the remaining specifications are entered.

In their analysis of this provision, the Manual's drafters explained:

The discussion is new and recognizes that it may be unnecessary and inappropriate to bring to the members' attention the fact that the accused has pleaded guilty to some offenses before trial on the merits of others. *See United States v. Nixon*, 15 M.J. 1028 (A.C.M.R.1983). *See also United States v. Wahnon*, 1 M.J. 144 (C.M.A.1975).

App. 21, R.C.M. 910(g), Manual (1984), *supra.*

Both the Air Force and the Army have formally adopted the approach suggested by the Court of Military Review in *Nixon* and urged in the Manual Discussion. *See* para. 4–4b, Air Force Regulation 111–1

(Aug. 1, 1984); para. 2–25 n. 5, D.A.Pam. 27–9 (Military Judges' Benchbook) (Change 1, Feb. 15, 1985). If military judges follow the guidance provided by the discussion of R.C.M. 910(g) and by the Air Force and Army directives, the interests of justice will best be served.[1]

### B

■ Even though the joinder of criminal charges may have the effect of limiting rights which the Government might otherwise possess, *see United States v. Marymont*, 11 U.S.C.M.A. 745, 751, 29 C.M.R. 561, 567 (1960), we do not believe that the joinder of charges as to which an accused pleads guilty necessarily precludes admission of *evidence* as to other offenses to which not-guilty pleas have been entered. Regardless of the plea, the evidence establishing the accused's misconduct can be received if it qualifies for admission under Mil.R.Evid. 404(b) and is not unduly prejudicial under Mil.R.Evid. 403. For example, if an accused charged with several drug offenses pleads guilty to some of them, evidence of those offenses may nonetheless be admissible to prove the remaining charges if it shows motive, intent, plan, or absence of entrapment. *Cf.* Mil.R.Evid. 404(b).[2]

■ A similar situation exists here with respect to the note from Rivera to his adopted daughter. Trial counsel linked this note closely to the contested charges that Rivera had engaged in fellatio with his adopted daughter during November and December 1983. Indeed, Raquel specifically testified that a certain suggestive clause in the note referred to the alleged oral sodomies.

Raquel's credibility was a central issue in the trial; and attacking her credibility was the sole basis for appellant's defense. The note—although it strongly suggested general misconduct by Rivera—was especially

---

1. Accordingly, we do not agree with the "advice to trial judges" to the contrary in Part III of the opinion in *United States v. Boland*, 22 M.J. 886, 890–91 (A.C.M.R.1986).

2. Likewise, an offense as to which an accused has pleaded guilty might be a proper subject of cross-examination if he testifies. *Cf.* Mil.R. Evid. 608(b).

important because it tended to corroborate Raquel. Her testimony was the keystone of the Government's case, so this corroboration was vital. The note was not used to show that appellant was a person of bad character who probably had acted in the way that a bad man would.

Under these circumstances, Mil.R.Evid. 404(b) would not have excluded admission of the note even if there had been no charges against Rivera with respect to his activities on December 25, 1983. The pendency of the charges and Rivera's guilty pleas thereto do not change the situation. Of course, the note tended to show appellant's guilt of the very offenses as to which he had pleaded guilty. However, whether those offenses were charged or uncharged made little difference. Indeed, Rivera may have benefited from the members' knowledge that he had pleaded guilty to other offenses, because they would have no incentive to find him guilty of the contested charges just to assure that he did not escape justice altogether.

The note was not subject to a hearsay objection if it came within Mil.R.Evid. 801(d)(2)(A), *"Admission by party-opponent,"* which provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is (A)the party's own statement in either the party's individual or representative capacity." Trial counsel satisfactorily established, without contradiction by the defense, that the note was written by Rivera to his daughter. Because Rivera was a party to the proceedings, this foundation satisfied the requirements of the rule and took the note outside the ambit of the hearsay prohibition.

Of course, to conclude that a statement is not hearsay does not, alone, make the statement admissible. The hearsay rules and their exceptions are rules of exclusion, not inclusion. As with any other type of evidence, for an out-of-court statement to be admissible, it must be relevant. Mil.R. Evid. 402. The prosecutor and the military judge, as well, were consciously concerned with ensuring that no evidence irrelevant to the contested charges would be present-

ed to the members during the trial of those charges. However, the Government had the right to offer any available evidence which was relevant to those charges. An accused may not stymie that right by pleading guilty to certain selected charges to which such evidence also is relevant.

We are fully convinced that the note in question was relevant to the contested charges of fellatio during November and December 1983. The prosecutor satisfactorily linked the note to those charges in his examination of Raquel Rivera, whose credibility was the pivotal issue in the trial. The note tended to fortify her credibility; and it did so in other ways than simply showing that Rivera was a bad man who therefore might have committed the crimes alleged.

The military judge was required to weigh the probative value of the note against the danger of undue prejudice. *See* Mil.R. Evid. 403. If, in his calculus of the interests the probative value outweighed the possibility of prejudice, then he acted properly in admitting the note in evidence.

### C

■ Introduction of the note must have made it clear to the court members that appellant had been found guilty of some other serious crimes. Even if they had not been advised initially about the other offenses to which Rivera had pleaded guilty, they would then have become aware of the misconduct involved. Therefore, even though the judge erred in providing the court members with information about the other offenses to which appellant had pleaded guilty, this error was non-prejudicial. The court members simply learned early in the trial about other wrongdoing, of which they would in any event have been generally apprised later in the trial. Under these circumstances—especially in light of the judge's repeated and emphatic advice to the members about the limits on use of the information they had been furnished on the uncontested charges and trial defense counsel's affirmative request that no special instruction be given on the prop-

er use of the note as evidence—we conclude that Rivera was not prejudiced.

### III

The military judge should have granted the motion *in limine* and not informed the court members about appellant's guilty pleas. However, the Government was entitled to introduce the challenged note into evidence. Under these circumstances and in light of the specific instructions given by the military judge, we conclude that the errors committed here caused no prejudice to Rivera.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

Judge SULLIVAN did not participate.