UNITED STATES, Appellee,

v.

Karen DAVIS (previously known as Charles W. Marks), Electrician's Mate Second Class, U.S. Navy, Appellant.

No. 58,859.

NMCM 86–3095.

U.S. Court of Military Appeals.

Sept. 26, 1988.

For Appellant: *Lieutenant Commander Robert J. Smith,* JAGC, USN (argued).

For Appellee: *Lieutenant Scott A. Hagen,* JAGC, USNR (argued); *Captain Wendell A. Kjos,* JAGC, USN (on brief); *Lieutenant Diane H. Corning,* JAGC, USNR.

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by special court-martial for alleged violations of Articles 86, 92, and 134 of the Uniform Code of Military Justice, 10 U.S.C. § 886, 892, and 934, respectively. The charge under Article 92 and one specification under Article 134 were dismissed by the judge. Pursuant to his guilty pleas, appellant was convicted of

the charge under Article 86, with exceptions and substitutions, and one specification under Article 134. Contrary to his pleas, he was found guilty of three of the four remaining Article 134 offenses. The court-martial sentenced him to a bad-conduct discharge.

The convening authority approved the findings and sentence. The Court of Military Review set aside the findings of guilty under Article 86, but otherwise it affirmed the findings and sentence. However, the bad-conduct discharge was later commuted to a general discharge by the Naval Clemency and Parole Board.

■ Two of the alleged violations of Article 134 concern wearing women's clothing or makeup. Appellant's conviction of these offenses has led to our granting review of these two issues: [1]

### I

WHETHER THE SPECIFICATIONS INVOLVING THE WEARING BY APPELLANT, A MALE, OF WOMEN'S CLOTHING FAIL TO STATE OFFENSES, BECAUSE THAT CONDUCT IS NOT INHERENTLY UNLAWFUL AND THE SPECIFICATIONS LACK WORDS OF CRIMINALITY.

### II

WHETHER THE MILITARY JUDGE ERRED BY INFORMING THE MEMBERS, OVER DEFENSE OBJECTIONS, OF APPELLANT'S GUILTY PLEAS (ON SOME OFFENSES) BEFORE PRESENTATION OF EVIDENCE ON OF-

---

1. This Court, in *United States v. Johanns,* 20 M.J. 155 (C.M.A.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985), held that notice that conduct is in violation of Articles 133 and 134 is a constitutional prerequisite to prosecution. Appellant, however, did not raise the issue at trial or on appeal of whether he had notice that his conduct violated Article 134. The issue thus is waived. *See United States v. Fisher,* 21 M.J. 327 (C.M.A.1986); W. LaFave and J. Israel, *Criminal Procedure* § 26.5(c) (1984).

Furthermore, there is substantial support in the record that appellant was aware of the adverse effects created by his conduct. For exam-

ple, appellant admitted that his co-workers had refused to work with him as a result of his cross-dressing and that the command would not use him in his rating because of this. There was also testimony that a supervisor had explained the effects of his cross-dressing and encouraged him to be more discreet.

Finally, unlike *Johanns,* this case involves conduct on a military installation which, on its face, appellant should have recognized as having an adverse effect on good order and discipline and as being service-discrediting. *See United States v. Tedder,* 24 M.J. 176 (C.M.A. 1987).

FENSES TO WHICH APPELLANT PLEADED NOT GUILTY.

## I

### A

At the time of the offenses charged, appellant suffered from an admitted gender-identity disorder. This disorder manifested itself in a strong desire to dress in women's clothing and began when appellant was a child.[2] This problem continued during his period of Naval service, and he sought and received assistance from several Navy psychiatrists. In addition, as a result of reading about gender-identity disorders, appellant discovered the existence of certain therapy groups in the area in which he was stationed, and he began to attend meetings of these groups.

Appellant first attended the meetings of the therapy groups in male clothing; but, according to his testimony, he soon discovered that he was expected to attend the meetings "cross-dressed"—that is, dressed in female clothing. Consequently, he began to attend the sessions in female attire.

At various times in early 1986, appellant was seen wearing female clothing in and around the Puget Sound Naval Shipyard. On January 10, 1986, he was apprehended by the Shore Patrol outside the Bachelor Enlisted Quarters (BEQ) of the shipyard wearing a skirt, nylon stockings, a blouse, and a wig. In January 1986, he appeared at the shipyard's Motion Picture Exchange in female clothing, including a woman's slacks, blouse, coat, and bra. While there were other occasions on which appellant wore female clothing in and around the shipyard, only these two occasions are relevant to this appeal.

### B

The two specifications which arose out of these incidents allege:

Charge II: ...

Specification: In that ... [appellant], a male, was at Building 885, Enlisted Barracks, Puget Sound Naval Shipyard, Bremerton, Washington, on or about 10 January 1986, dressed in women's clothing, to wit: nylon stockings, skirt, blouse, sweater and wig, which conduct was to the prejudice of good order and discipline and of a nature to bring discredit upon the Armed Forces.

Additional Charge II: ...

Specification 2: In that ... [appellant], a male, did at building #434, Motion Picture Exchange, Puget Sound Naval Shipyard, Bremerton, Washington, on or about January 1986, appear dressed in articles of women's clothing, to wit: nylon stockings, blouse, bra, shoes, women's fashion jeans, nail polish, purse and a woman's coat, which conduct was to the prejudice of good order and discipline and of a nature to bring discredit upon the Armed Forces.

Relying primarily on the case of *United States v. Brice,* 17 U.S.C.M.A. 336, 38 C.M.R 134 (1967), appellant argues that both of these specifications are fatally defective because they do not contain words of criminality. In *Brice,* this Court held deficient a specification which had charged the accused under Article 134 with attempting to sell marijuana. The specification had stated merely that the accused had attempted to sell marijuana; but it contained no words of criminality indicating that he did so "wrongfully," "unlawfully," or "without authority." Moreover, it did not recite the language of Article 134 to indicate that such conduct was prejudicial to good order and discipline or tended to bring discredit upon the armed forces. Consequently, we held that, "where an act is not in itself an offense, being made so only by statute, regulations, or custom, words importing criminality are a requirement and, if lacking, the specification is deficient." *Id.* at 340, 38 C.M.R. at 138.

---

**2.** Appellant has been diagnosed medically as a transvestite, but he claims to be a transsexual. Appellant testified that a transvestite is a person who obtains sexual excitement wearing the clothing of the opposite sex, while a transsexual is a person who desires to be a member of the opposite sex.

Appellant argues that the specifications in this case are similarly defective.

■ In *United States v. Sell*, 3 U.S.C. M.A. 202, 206, 11 C.M.R. 202, 206 (1953), we said:

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

This test was affirmed by this Court in *United States v. Schwarz*, 15 M.J. 109, 111 (C.M.A.1983). Under the *Sell* test, there can be little doubt that the specifications challenged here are adequate.

■ If conduct is alleged under Article 134 "as a disorder or neglect to the prejudice of good order and discipline" or as being "of a nature to bring discredit upon the armed forces," two elements must be set out:

> (1) That the accused did or failed to do certain acts; and
>
> (2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 60b, Part IV, Manual for Courts-Martial, United States, 1984. The challenged specifications clearly allege both elements: They contain specific factual allegations of the acts committed, and they charge that the conduct was prejudicial to good order and discipline and of a nature to bring discredit upon the Armed Forces. Further, the allegations were sufficient to put appellant on notice of the specific conduct that the Navy alleged was in violation of Article 134 and to enable him to assert double jeopardy in any future prosecution for the same offenses.

*Brice* does not compel a contrary conclusion. There, the specification did not contain *any* language which asserted criminal conduct: It neither characterized the accused's actions as "wrongful" or "unlawful" nor used the language of Article 134 to indicate that the conduct was prejudicial to good order and discipline or of a nature to bring discredit on the Armed Forces.

■ As the Government points out in its brief, Article 134 would appear to encompass two general classes of conduct: First, that which is or generally has been recognized as illegal under the common law or under most statutory criminal codes; and, second, that which—however eccentric or unusual—would not be viewed as criminal outside the military context. The former category is prejudicial to good order and discipline or is service-discrediting for the very reason that it *is* (or has been) generally recognized as illegal; such activity, by its unlawful nature, tends to prejudice good order or to discredit the service. On the other hand, the latter category of conduct is illegal solely because, *in the military context, its effect* is to prejudice good order or to discredit the service.

With respect to conduct that, wherever it occurs, is generally viewed as illegal, it can be argued that a specific allegation of "wrongfulness" or "unlawfulness" is surplusage. However, we need not decide that issue in this case. Instead, we must inquire what allegations are necessary with respect to conduct, such as appellant's, which apparently violated no statute or regulation and generally would not be viewed as inherently unlawful.

The essence of appellant's crime is that his unusual conduct, when it occurred on a military installation, had an adverse effect on military order and discipline and created a negative perception of the armed services. Apart from the peculiar circumstances and demands of the military society, there could be no crime. Under such circumstances, the "wrongfulness" of the conduct consisted of its threat to good order and discipline and its discredit to the armed forces—these elements conforming to the

first two clauses of Article 134. We can see no harm in alleging criminality in terms of the provisions of Article 134 which made the conduct wrongful, rather than by using a general allegation that appellant's activity was "wrongful" or "unlawful." [3] The objectives of notice and protection from double jeopardy are in our view satisfied by the language employed here.

Our attention has been called to cases from the Courts of Military Review and their predecessors which, although dealing with Article 133, indicate that the general language of Article 134 (conduct "to the prejudice of good order and discipline in the armed forces" or "of a nature to bring discredit upon the armed forces") is mere surplusage and of no legal effect. Thus, use of such language will not supply the required words of criminality. *See United States v. Lockstrom*, 48 C.M.R. 202 (A.F.C. M.R.1974); *United States v. Wolfson*, 36 C.M.R. 722 (A.B.R.1965). On the basis of these cases, it might be argued that the general language of Article 134 used in the two questioned specifications had no legal effect and could not provide the requisite allegations of criminality. This Court, however, has never held that the general language of Article 134 is in all cases of no legal effect. Further, in both of the cited cases the specific conduct *described in the specifications*, absent the general language, generally would not be prejudicial to good order and discipline or service-discrediting. Thus, at most, these cases stand for the proposition that a specification cannot be saved by general language drawn from Article 134 when that specification otherwise does not contain words of criminality or does not set forth acts that might be prejudicial to good order and discipline or service-discrediting.

For example, in *Lockstrom*, apart from the general language about "conduct ... unbecoming an officer and gentleman," the

specification alleged only that the accused had "fail[ed] to report his whereabouts to ... his unit commander." 48 C.M.R. at 203. There is, of course, no general obligation for an officer to report his whereabouts to his commander, and the court held that the general language could not save the specification.

Such is not the case here. The particular facts and surrounding circumstances recited in the specifications in this case describe conduct on a military installation which virtually always would be prejudicial to good order and discipline and discrediting to the Armed Forces. The fact that there are some conceivable situations—such as a King Neptune ceremony and Kibuki theater—where "cross-dressing" might not be prejudicial to good order and discipline is not significant. These occasions do not generally occur in or near a barracks or a theater, the locations described in the specifications. *See also United States v. Regan*, 11 M.J. 745, 747 (A.C.M.R.1981) (Lewis, J., concurring in part).

## II

Appellant also contends that his conviction should be reversed because the military judge permitted the court members to be advised that appellant had pleaded guilty to two offenses prior to their consideration of the offenses to which he had pleaded not guilty. In *United States v. Rivera*, 23 M.J. 89 (C.M.A.1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 157 (1987), we recognized the dangers presented when court members are advised of guilty pleas prior to their findings on the remaining specifications; and we held that under the facts of that case it was error for the judge to have done so.

 Where, however, admission of evidence does not violate the accused's constitutional rights,[4] reversal is not required if

---

3. The offenses under Article 134 for which sample specifications are provided and which include words such as "wrongful" or "unlawful," are all offenses which are (or have been) generally recognized as illegal.

4. Error of constitutional dimensions requires either automatic reversal or an inquiry into whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence. *Chapman v. California*, 386 U.S.

we determine that the error was not prejudicial, *i.e.*, if the finder of fact was not influenced by it or if it had only a slight effect on resolution of the case. *United States v. Barnes*, 8 M.J. 115 (C.M.A.1979). Under this standard, we conclude that no prejudice resulted to appellant from the judge's error.

Appellant stipulated to the essential facts of each specification of which he was found guilty by the members—that is, he admitted the first of the two elements required to be proved under Article 134. The only remaining issue was whether the conduct was prejudicial to good order and discipline or service-discrediting or disorderly.

This issue is logically unrelated to appellant's character and, thus, logically unrelated to the dangers discussed in *Rivera.* Whether appellant's acts were prejudicial to good order and discipline or service-discrediting depended upon the inherent nature of the conduct, not on whether his character was such as to make it more likely that he committed the acts. Contrariwise, it was the potential for adverse reflection on the accused's character by admission of guilty pleas to other offenses that concerned us in *Rivera.*

Appellant argues that the court members' knowledge of his guilty pleas undermined his defense that he was acting pursuant to orders and was, therefore, prejudicial. This is unpersuasive. First, there is simply no credible evidence in the record from which the court members could have found that appellant had been ordered to cross-dress under the circumstances

charged. At most—and we view this as extremely unlikely—the court members could have found that appellant reasonably understood that the Navy psychiatrist, Dr. Massa, had ordered him to continue his therapy. There is no indication in the record, however, that this therapy required him to cross-dress in places such as the exchange theater or the bachelor enlisted quarters. Moreover, the record is devoid of evidence that Dr. Massa reasonably could have been understood as ordering appellant to undergo therapy which would require such activity.

▪ Finally, the offenses to which appellant pleaded guilty—failure to go to his appointed place of duty and being incapacitated for the proper performance of his duty—are completely different from the offenses of which the members found him guilty; and they do not reflect on the credibility of his testimony. It is extremely improbable that knowledge of pleas of guilty to these offenses would have had any effect whatsoever on the members' consideration of whether appellant was acting under orders. Thus, the dangers discussed in *Rivera* simply are absent from this case.[5]

### III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See United States v. Moore*, 1 M.J. 390 (C.M.A.1976).

**5.** We feel compelled, however, to reiterate our direction in *Rivera* that military judges refrain from advising court members of an accused's

guilty pleas. As this case indicates, this "practice ... provides a fertile area for assertion of error on appeal," *United States v. Nixon*, 15 M.J. 1028, 1031 (A.C.M.R), *pet. denied*, 17 M.J. 183 (1983), and can serve no useful purpose.