**UNITED STATES**

v.

**Virgilio G. GUERRERO, 562 55 5660, Storekeeper First Class (E–6), U.S. Navy.**

**NMCM 90 0160.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 1 Nov. 1989.

Decided 16 Aug. 1990.

LT Fredric D. Firestone, JAGC, USNR, Appellate Defense Counsel.

LT Wade W. Parrish, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and JONES and HILTON, Judges.

HILTON, Judge:

Contrary to his pleas, appellant was convicted by a military judge alone sitting as a special court-martial of two specifications alleging that appellant dressed in women's clothing in public view in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] He was acquit-

---

1. Specification 2 reads:

   Specification 2: In that Storekeeper First Class Petty Officer Virgilio G. Guerrero, U.S. Navy, Fleet Training Center, San Diego, on active duty, a male, was, at 2410 "B" Avenue, Apt # 10, National City, California, on or about 20 April 1989, wrongfully dressed in women's clothing, to wit: a wig, make-up, mini-skirt, and blouse in the presence of Fireman Recruit Scott A. Beatty, U.S. Navy, which conduct was to the prejudice of good order and discipline and of a nature to bring discredit upon the Armed Forces.
   Specification 3 reads:

   Specification 3: In that Storekeeper First Class Petty Officer Virgilio G. Guerrero, U.S. Navy, Fleet Training Center, San Diego, on active duty, a male, was, at or near 2410 "B" Avenue, National City, California, at various and diverse times during December 1988 to June 1989, wrongfully dressed in women's clothing, to wit: a wig, make-up, mini-skirt, and blouse in public view, which conduct was to the prejudice of good order and discipline and of a nature to bring discredit upon the Armed Forces.
   With respect to Specification 3, the military judge found the appellant guilty by exceptions

ted of a specification alleging solicitation to commit sodomy in violation of Article 134, UCMJ. The military judge sentenced him to a bad-conduct discharge and reduction to E–5. The convening authority approved the sentence as adjudged, but effectuated the automatic reduction provision of Article 58a, UCMJ, 10 U.S.C. § 858a.

On review, appellant asserts that the military judge erred to his substantial prejudice by denying his motion to dismiss Specification 3 of the Charge, which is the specification describing appellant's wrongfully dressing in women's clothing in public view in June 1989. The basis for appellant's position here is essentially the same as at trial: Appellant had no notice that the acts set forth in Specification 3 would be considered criminal, as is required by the Fifth Amendment to the Constitution.

At trial, appellant admitted through a confessional stipulation of fact that he had dressed in women's clothing in public view as alleged in the two specifications of which he was convicted. He vigorously asserted, however, that such conduct was not wrongful, *i.e.*, that none of the acts set forth in the two specifications was conduct prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Appellant's dressing in women's clothing was referred to during the trial as "cross-dressing" and that is what we will call it here.

The following is a brief recitation of the factual scenario for Specification 3 of the Charge. In June 1989, appellant was seen attired in women's clothing at or near his off-base apartment. Seaman D., a neighbor of appellant, opened his windows one evening in June 1989 to be greeted by the sight of appellant in his bedroom dressed in wig, make-up, and women's clothing. The curtains of appellant's windows were open and Seaman D. could look directly across into appellant's apartment, the wall of which was 10–15 feet away. Seaman D., who knew that appellant was a member of the armed forces, subsequently complained to the apartment manager. Mr. S., a retired master chief petty officer and the

manager of appellant's apartment complex, saw appellant dressed in women's clothing "just passing by one night" in early June 1989. Later in June, Mr. S. saw appellant dressed in a tight skirt, wig, and makeup when appellant came to Mr. S's apartment. Appellant, who told Mr. S. that he was coming from the club, had locked himself out of his apartment and asked the manager's assistance. Mr. S. accompanied appellant to his apartment and using his master key, let him back in. Mr. S. knew that appellant was in the Navy because he had seen him attired in the uniform of a chief petty officer.

Although appellate defense counsel have made no assignment of error with respect to Specification 2 of the Charge, we have set forth the facts because we decided to evaluate whether Specification 2 alleged an offense. The facts relating to that specification are: On 20 April 1989, appellant and FA B. became acquainted as they played a game of pool together at a bowling alley at Naval Training Command (NTC), San Diego, California. Neither man was in uniform. Afterward they had something to eat, and appellant offered to drive FA B. to the airport to pick up boarding passes. In the car, appellant informed FA B. that he was a chief petty officer. FA B. told appellant he was in the military, had recently completed school, and was going home on leave before taking up his assignment in Diego Garcia. On the way to the airport, appellant talked about prostitution and his friends. After picking up the boarding passes, appellant invited FA B. to his apartment for a drink. At the apartment, appellant gave FA B. a drink, put on a movie, and said "Sometimes I crossover." When appellant left the room, FA B. "got his name off a telephone bill" which was on the couch. When asked why he did so, he answered: "Cause I knew something was messed up after he said that to me. I was putting everything together." Fifteen minutes after leaving the room, appellant returned in "a long-haired wig, makeup, mini-skirt, and a blouse." When he saw appellant thus transformed, FA B. "got up and

and substitutions of committing the offense in June 1989.

headed out the door." As he did so he heard appellant say: "I thought you had experienced it. I'll have to show you sometime." FA B. reported the incident to his command and to the Naval Investigative Service.

At the time he committed the offenses for which he was convicted, appellant had been frocked to the rank of chief petty officer (E–7). He had been in the Navy for 9½ years.

In order for there to be a violation of Article 134, UCMJ, it must be proved that:

(1) The accused did or failed to do certain acts; and

(2) Under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

■ The law also requires that an accused must be on notice that his conduct is unlawful, *i.e.*, that the article of the UCMJ in issue, by its language, fairly informs him "that the particular conduct which he engaged in was punishable." *Parker v. Levy*, 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974).

■ As the Court of Military Appeals observed in *United States v. Sadinsky*, 14 U.S.C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964), "the General Article is not such a catchall as to make every irregular, mischievous, or improper act a court-martial offense." Rather, it is misconduct which is "directly and palpably—as distinguished from indirectly and remotely—prejudicial to good order and discipline." *United States v. Holiday*, 4 U.S.C.M.A. 454, 456, 16 C.M.R. 28, 30 (1954); *see also* Paragraph 60c(2)(a), Part IV, Manual for Courts–Martial (MCM), United States, 1984. There is no requirement that conduct be prohibited by order, regulation or statute for there to be a violation of Article 134, UCMJ. *Sandisky*, 34 C.M.R. at 346.

Article 134, UCMJ, also proscribes service-discrediting conduct, *i.e.*, conduct which has a "tendency to bring the service into disrepute or which tends to lower it in public esteem." Paragraph 60c(3), MCM.

■ As in *United States v. Davis*, 26 M.J. 445 (C.M.A.1988), "[t]he essence of appellant's crime is that his unusual conduct ... had an adverse effect on military order and discipline and created a negative perception of the armed services."[2] We are satisfied beyond a reasonable doubt from the testimony of the witnesses, and the totality of the circumstances in this case, that appellant's cross-dressing as described in Specifications 2 and 3 was both prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces. Among those matters we viewed as especially significant were that appellant was frocked as a chief petty officer in the Navy with 9½ years of service; that appellant's cross-dressing was casual, open, and notorious; that he was known to be a chief petty officer in the Navy by Mr. S. (the apartment manager), Seaman D., and FA B. at the time those individuals observed appellant dressed as a woman; and, that Seaman D. and FA B. were junior to appellant. *See United States v. Hooper*, 9 U.S.C.M.A. 637, 647, 26 C.M.R. 417, 427 (1958).

---

**2.** In *United States v. Davis*, 26 M.J. 445 (C.M.A. 1988), the Court recognized situations in which cross-dressing might not be viewed as violative of Article 134, UCMJ, citing Kabuki theater and the King Neptune ceremony. In the case *sub judice*, as in *Davis*, there is no evidence that appellant's conduct was in connection with a theatrical event or traditional service ritual, such as initiation into the Order of the Shellback, where dressing in clothing of the opposite sex is not considered service-discrediting or prejudicial to good order and discipline in the services. Appellant contrasts the facts of the case with those of *Davis* and takes the position that because appellant's cross-dressing did not occur on a military installation and provoke a similarly tangible response within his command, it should not be viewed as misconduct subject to the UCMJ. There was evidence that Davis was aware that his co-workers had refused to work with him because of his cross-dressing, that he had been counseled about it, and that he had been "encouraged to be more discreet." We do not believe the Court handed down a litmus test for when cross-dressing is an offense, but rather decided *inter alia* whether the particular facts in *Davis* established an offense when measured against the elements of an offense under the General Article.

■ We also find appellant's contention that he lacked adequate notice of the criminality of his conduct to be without merit. Considering his status as a chief petty officer and the number of years he had been in the Navy, it is reasonable to assume that he was well aware that there were appropriate standards of civilian attire to which sailors must adhere.[3] We also consider that pursuant to Article 137, UCMJ, 10 U.S.C. § 937, the articles of the UCMJ had been explained to appellant, so that he had "fair notice" that conduct prejudicial to good order and discipline in the armed forces and all conduct of a nature to bring discredit upon the armed forces were punishable. *United States v. Woods*, 28 M.J. 318 (C.M.A.1989); *See Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439.

■ We next turn to consideration of the matter whether a bad-conduct discharge is an authorized punishment for the offense of wrongfully dressing in women's clothing in violation of Article 134, UCMJ.

Specifications 2 and 3 are "novel" specifications and allege conduct not falling under any of the offenses set out as violations of Article 134, UCMJ, in the Manual for Courts–Martial. In arriving, therefore, at what the maximum punishment ought to be for the offense of wrongfully dressing in women's clothing, the military judge analogized appellant's misconduct to the wearing of unauthorized insignia, decoration, badge, ribbon, device, or lapel button in violation of Article 134, UCMJ, and determined that, like such an offense, appellant's offense of cross-dressing should subject him to the maximum jurisdictional limit of punishment at a special court-martial.

We take a different view. The offense of wrongfully dressing in women's clothing (cross-dressing) is more closely akin to disorderly conduct in violation of Article 134, UCMJ. Disorderly conduct is described as "conduct of such a nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby. It includes conduct that endangers public morals or outrages public decency and any disturbance of a contentious or turbulent character." Paragraph 73c(2), MCM. The maximum punishment for disorderly conduct under such circumstances as to bring discredit upon the military service[4] is confinement for 4 months and forfeiture of two-thirds pay per month for 4 months. Paragraph 73e(1)(a), MCM.

■ Turning to the present case, appellant was convicted of two offenses, each of which is punishable by confinement for 4 months, and forfeiture of two-thirds pay per month for 4 months. Rule for Courts–Martial (R.C.M.), 1003(d)(3), MCM, provides that "[i]f an accused is found guilty of two or more offenses for none of which a dishonorable or bad-conduct discharge is otherwise authorized, the fact that the authorized confinement for these offenses totals 6 months or more shall, in addition, authorize a bad-conduct discharge and forfeiture of all pay and allowances." The maximum punishment in this case, therefore, includes a bad-conduct discharge since the maximum authorized confinement (absent the jurisdictional limitation of a special court-martial) is confinement for 8 months. *Cf. United States v. Timmons*, 13 M.J. 431, 435 (C.M.A.1982), (where Court found no fair risk of prejudice in the failure of the military judge to instruct the members of the basis for the augmented punishment under paragraph 127c, MCM, 1969, the predecessor to R.C.M. 1003(d)(3)).

Accordingly, we affirm the findings. We reassess the sentence in view of our ruling on the maximum permissible punishment, and in doing so, we view as especially egregious appellant's misconduct with respect to FA B., which is the subject of Specification 2. *Id.* We, therefore, conclude that

---

**3.** Standard Organization and Regulations of the U.S. Navy (OPNAVINST 3120.32B), paragraph 510.10 titled CIVILIAN CLOTHING provides in pertinent part at subparagraph b. that: "When civilian clothing is worn, naval personnel will ensure that their dress and personal appearance are appropriate for the occasion and will not bring discredit on the naval service. Current styles and fashions are authorized."

**4.** We note that the Government *pleaded* and *proved* appellant's conduct as "service discrediting conduct."

the sentence imposed by the military judge, as approved on review below, is appropriate under all the facts and circumstances of this case and affirm. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

Senior Judge ALBERTSON and Judge JONES concur.