UNITED STATES, Appellee,

v.

Virgilio G. GUERRERO, Storekeeper First Class, U.S. Navy, Appellant.

No. 65,437.
NMCM 90 0160.

U.S. Court of Military Appeals.

Argued July 9, 1991.

Decided Sept. 26, 1991.

For Appellant: *Gregory A. Zitani, Esq.* (argued).

For Appellee: *Commander Thomas W. Osborne, JAGC, USN* (argued); *Major Laura L. Scudder, USMC.*

*Opinion of the Court*

COX, Judge:

Appellant, a male First Class Petty Officer, United States Navy, has been convicted of violating Article 134, Uniform Code of Military Justice, 10 USC § 934. He was acquitted of one specification of soliciting a homosexual act from another sailor, Fireman Recruit Beatty. He was convicted of two specifications alleging that he dressed as a woman under such circumstances as were prejudicial to good order and discipline in the Navy and of a nature to bring discredit upon the Navy. We are called upon once again to determine whether "cross-dressing" may be the basis for a violation of the Uniform Code of Military Justice. *See United States v. Davis*, 26 MJ 445 (CMA 1988).[1]

Three separate episodes of cross-dressing were consolidated into the two specifications. The first episode arose out of an alleged homosexual solicitation and involved Fireman Apprentice (E-1) Beatty, who at the time of the incident was a Fireman Recruit. Beatty testified he met appellant while shooting pool at the Naval Training Center bowling alley in San Diego, California. Both men were in civilian clothing. After spending some time shooting pool and eating, Beatty said he had to go to the airport and pick up boarding passes for an upcoming trip. Appellant offered him a ride and Beatty accepted.

As they left the bowling alley, Beatty testified that appellant highlighted a sticker on his car. The sticker reflected the pay grade of petty officer, E-7 (appellant had been promoted to Chief Petty Officer and "frocked," thus he could wear the uniform and insignia of a Chief). Beatty asked if he was "a first class petty officer," to which appellant responded, "Don't degrade me." Appellant then handed Beatty his military identification card, which reflected that he was rated as a chief petty officer.

En route to the airport, Beatty informed appellant that he had recently completed school and was going home before taking his assignment. Returning from the airport, appellant suggested they return to his off-base apartment and do some drinking. Testimony indicates that by this time Beatty was "putting everything together" and suspected appellant was homosexual. At his apartment, appellant poured Beatty a drink of whiskey and withdrew into another room. About 15 minutes later, he emerged dressed "in a long-haired wig, makeup, miniskirt, and a blouse." As Beatty was leaving, appellant said, "I thought you had experienced it. I'll have to show you sometime." Beatty believed appellant "wanted to have sex with him ... ['c]ause of the way he dressed up."

At the conclusion of the testimony, appellant moved for a finding of not guilty of soliciting a homosexual act. The military judge granted the motion. However, he denied the motion for a finding of not guilty as to the "cross-dressing" offense.

Two other witnesses provided the basis for the conviction of the second "cross-dressing" offense. Radioman Seaman (E-3) Dennis, was appellant's neighbor in an off-base civilian apartment complex. Dennis testified:

> I was opening my windows ... opening curtains, ... and he was in his bedroom, ... right across—directly from mine and he had his wig on or whatever and makeup on.

\* \* \*

---

1. Appellant was tried by a military judge sitting alone as a special court-martial. Following his conviction, appellant was sentenced to reduction to pay-grade E-5 and to be discharged from the service with a bad-conduct discharge. The convening authority approved the adjudged sentence. The action by the convening authority effected an "automatic" reduction of appellant to pay grade E-1 pursuant to Article 58a, Uniform Code of Military Justice, 10 USC § 858a. The Court of Military Review affirmed the findings and sentence. 31 MJ 692, 697 (1990).

On April 19, 1990, the Naval Clemency and Parole Board, on its own motion, reviewed appellant's case "for Secretarial clemency and restoration to duty." By an action dated May 1, 1990, the board remitted appellant's bad-conduct discharge in favor of a general discharge.

[T]he windows ... [were about 10 or 15 feet away] evenly levelled out and you just open it up and you could see directly in.

* * *

He had curtains, ...

* * *

They were open.

Dennis complained to the apartment complex manager, retired Master Chief Boiler Technician Sesley, about the behavior as follows:

I was complaining because it was beginning to be a nuisance, having to look out my curtains and see this going on or whatever, you know, and my wife's in there trying to watch television, and instead of watching television we were watching the window, because they walk right on by, do their thing, whatever.

Master Chief Sesley, who had retired from the Navy after serving for 32 years, was the third witness against appellant. Chief Sesley testified that he also had witnessed appellant dressed in women's clothing on two occasions. The first time, appellant was "just passing by one night"; and the second time, appellant appeared at Master Chief Sesley's apartment dressed in a "skirt, wig, [and] makeup" asking for assistance because he had locked himself out of his apartment.

Appellant stipulated that he was indeed dressed in women's clothing on all three occasions. Based on the evidence, the military judge found appellant guilty of the two specifications. He based his findings on the legal principle that the conduct, although "not unlawful ... under common law or any other statute," was unlawful under "the totality of the circumstances of the conduct of the accused and the military scenario."

Appellant grounds his appeal on two fundamental claims. First, he postulates lack of notice that his acts were criminal; therefore, he asserts a violation of due process as required by the Fifth Amendment to the United States Constitution. Second, he claims that his acts were lawful, did not

prejudice good order and discipline, and did not bring discredit upon the armed forces. Thus, the acts cannot form the basis for a criminal conviction.

■ The violation is charged under Article 134, the "General Article." Paragraph 60, Part IV, of the Manual for Courts–Martial, United States, 1984, requires the following "proof ... for conviction of an offense under Article 134":

(1) That the accused did or failed to do certain acts; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

An accused must be on notice that his conduct is unlawful and that the article fairly informs "that the particular conduct which he engaged in was punishable." *Parker v. Levy,* 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). Admittedly, specifications 2 and 3 are, as described by the court below, "novel." 31 MJ at 696. "Cross-dressing" has not been set out as a violation of Article 134. However, in *United States v. Davis, supra,* we examined this behavior in relation to Article 134, reiterating that Article 134 has two categories of proscribed conduct:

1—that which is "illegal under the common law or" statutes; and

2—"that which—however eccentric or unusual" is not unlawful in a civilian community but becomes illegal "solely because, *in the military context, its effect* is to prejudice good order or to discredit the service." *Id.* at 448. For appellant's conduct to be criminal, it must be within the latter category.

■ We have little trouble agreeing with the Court of Military Review that appellant was on notice that conduct which is prejudicial to good order and discipline or brings discredit upon the Navy is an offense under Article 134. According to Judge Hilton:

Considering his status as a chief petty officer and the number of years he had

been in the Navy, it is reasonable to assume that he was well aware that there were appropriate standards of civilian attire to which sailors must adhere. We also consider that pursuant to Article 137, UCMJ, 10 USC § 937, the articles of the UCMJ had been explained to appellant, so that he had "fair notice" that conduct prejudicial to good order and discipline in the armed forces and all conduct of a nature to bring discredit upon the armed forces were punishable.

31 MJ at 696 (footnote and citations omitted).

However, determining whether the specific episodes of cross-dressing were, indeed, unlawful presents a more difficult question, one not easily disposed of under the general rubric of prejudice or discredit. It is difficult because cross-dressing can certainly be non-prejudicial and even enhance morale and discipline. In *United States v. Davis, supra,* we recognized that "a King Neptune ceremony and Kibuki theater" would neither be prejudicial to good order and discipline nor bring discredit. 26 MJ at 449. Indeed, many popular entertainers have successfully portrayed women characters, such as Dustin Hoffman's "Tootsie" or Flip Wilson's "Geraldine." Certainly most Americans are familiar with Jamie Farr's character, "Corporal Klinger" from the television series, "M.A.S.H.," a show that parodies military life, seen on-board ships and in day rooms throughout the world.

■ Thus, it is not the cross-dressing *per se* which gives rise to the offense. Rather, it is (1) the time, (2) the place, (3) the circumstances, and (4) the purpose for the cross-dressing, all together, which form the basis for determining if the conduct is "to the prejudice of good order and discipline ... or was of a nature to bring discredit upon the armed forces." Para. 60b. *See generally United States v. Davis, su-*

pra. For example, if a servicemember cross-dresses in the privacy [2] of his home, with his curtains or drapes closed and no reasonable belief that he was being observed by others or bringing discredit to his rating as a petty officer or to the U.S. Navy, it would not constitute the offense. *See United States v. Choate,* 32 MJ 423 (CMA 1991). Also, the factfinder must be certain that the prejudice or the discrediting nature of the conduct is legitimately focused toward good order and discipline or discrediting to the armed forces, and is not solely the result of the personal fears, phobias, biases, or prejudices of the witnesses.

■ We are satisfied from our review of the record that the military judge fully understood these distinctions, as did the United States Navy–Marine Corps Court of Military Review. Furthermore, there is credible evidence of record to support each and every element of the offenses. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN concurs.

EVERETT, Senior Judge (concurring in part and dissenting in part):

I have no disagreement with the principles of law relied on in the majority opinion. Indeed, I believe the evidence supports the conviction of Guerrero for his cross-dressing in connection with the episode involving Fireman Apprentice Beatty, whom appellant had taken home with him. As to the other specification of "cross-dressing," however, the relationship of appellant's conduct to any legitimate interests of the Armed Services was too indirect and attenuated to justify finding him guilty.

The explanation of Article 134, Uniform Code of Military Justice, 10 USC § 934, in paragraph 60c(2)(a), Part IV, Manual for

2. *Webster's Ninth New Collegiate Dictionary* 936 (1988) defines "privacy" as follows:
   [T]he quality or state of being *apart from* company or *observation*: SECLUSION ...

freedom from unauthorized intrusion ... a place of seclusion ... SECRECY.
(Emphasis added.)

Courts–Martial, United States, 1984, states: "Almost any irregular or improper act on the part of a member of the military service could be regarded as prejudicial in some indirect or remote sense; however, this article does not include these distant effects. It is confined to cases in which the prejudice is reasonably direct and palpable." Even though Guerrero had been seen casually by others while he was "cross-dressed," he was away from any military installation and was either in his apartment or in transit to or from it. Under these circumstances, to uphold his conviction—and the sentence to a bad-conduct discharge which was based in part thereon—is not within the contemplation of Article 134.

Indeed, to affirm such a conviction expands Article 134 so greatly as to raise problems of notice and vagueness; and, although I realize that *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), upheld Article 134 against constitutional attack on such grounds, an overly broad application of Article 134 in cases like this is an invitation for the Supreme Court to reexamine its holding there.