*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellee

**v.**

## Javon C. RICHARD, Airman Basic
United States Air Force, Appellant

### No. 22-0091
Crim. App. No. 39918

Argued May 10, 2022—Decided September 7, 2022

Military Judge: Christopher M. Schumann

For Appellant: *Major Matthew L. Blyth* (argued); *Major Stuart J. Anderson* and *Mark C. Bruegger,* Esq. (on brief).

For Appellee: *Major Brittany M. Speirs* (argued); *Colonel Naomi P. Dennis, Lieutenant Colonel Matthew J. Neil,* and *Mary Ellen Payne,* Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Senior Judge STUCKY joined. Judge MAGGS filed a separate concurring opinion, in which Senior Judge STUCKY joined.

_____

Judge HARDY delivered the opinion of the Court.

The Government charged Appellant with three specifications of violating the general article, Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018), for producing, possessing, and distributing child pornography. To obtain a conviction for these offenses, the Government was required to prove beyond a reasonable doubt both that Appellant engaged in the alleged conduct and that the general article's "terminal element" was satisfied, meaning that the conduct either: (1) prejudiced good order and discipline in the armed forces; (2) was of a nature to bring discredit upon the armed forces; or (3) was otherwise a noncapital crime or offense. *Id*. The Government elected to charge only the first of these three options and was thus

required to prove that Appellant's misconduct was prejudicial to good order and discipline.[1]

Despite this burden, the Government failed to proffer any evidence at Appellant's court-martial that demonstrated how Appellant's behavior prejudiced good order and discipline, and instead focused on proving the other element of the offense: that Appellant engaged in the alleged misconduct. Nevertheless, the panel convicted Appellant of all three Article 134 specifications, and the United States Air Force Court of Criminal Appeals (AFCCA) affirmed. Because every element of a criminal offense—including the terminal element of Article 134, UCMJ—must be proven beyond a reasonable doubt and cannot be conclusively presumed based on the accused's conduct, we conclude that Appellant's child pornography-related convictions under the general article were not legally sufficient. The AFCCA is reversed, Appellant's convictions for the child pornography-related offenses under Article 134, UCMJ, are set aside, and the case is remanded for further proceedings.

## I. Background

While stationed at Ramstein Air Base in Germany, Appellant initiated a sexual relationship with IB, a sixteen-year-old German citizen. In the course of their relationship, Appellant filmed himself and IB having intercourse in his barracks dorm room two times—once without IB's consent and once with her consent. After Appellant returned to the Unites States, but before IB turned eighteen, Appellant and IB continued to engage in sexual acts over live video chats, several of which Appellant memorialized by taking screenshots without IB's awareness. Appellant kept those photos on his phone along with other sexually explicit images IB consensually sent him.

---

[1] To be clear, nothing in this case prevented the Government from charging that Appellant's conduct was service discrediting *in addition* to being prejudicial to good order and discipline. *See United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010) (noting that, in charging violations of Article 134, "the government is always free to plead in the alternative"). In the instant case, however, the Government chose to limit itself to proving Appellant's conduct prejudiced good order and discipline.

Appellant and IB's relationship soured when each became upset about the other engaging in relationships with other people. Angered by IB's actions, Appellant sent several sexually explicit pictures of IB to her mother. After another instance of suspected infidelity, Appellant logged into IB's Snapchat account, posted several nude photos of IB to her story (a feature of the app that allows IB's Snapchat contacts to see the images), and changed her password so that she was unable to remove the images until Appellant relinquished the new password. Although IB was eventually able to remove the images, she testified that she received multiple messages from people who saw the images on her Snapchat story.

Based on Appellant's interactions with IB, the Government charged Appellant with three specifications of violating the general article, Article 134, UCMJ, for producing, possessing, and distributing child pornography, and one specification of assault under Article 128, UCMJ, 10 U.S.C. § 928 (2018), for shoving and striking IB.[2] With respect to the violations of the general article, the Government charged Appellant with conduct to the prejudice of good order and discipline in the armed forces. Thus, for each of these offenses, the Government was required to prove two elements: (1) that Appellant knowingly and wrongfully produced, possessed, or distributed child pornography; and (2) that under the circumstances, the Appellant's conduct was to the prejudice of good order and discipline in the armed forces. Article 134, UCMJ; *Manual for Courts-Martial, United States* pt. IV, para. 68b.b. (2016 ed.) (*Manual* or *MCM*).

At trial, the Government failed to present any specific evidence to support the second element of the Article 134 charges, and the Government trial counsel neglected to include any analysis of the second element during the closing

---

[2] Unrelated to Appellant's relationship with IB, the Government also charged Appellant with one specification of destruction of nongovernment property under Article 109, UCMJ, 10 U.S.C. § 909 (2018), four specifications of using or distributing controlled substances under Article 112a, UCMJ, 10 U.S.C. § 912a (2018), three specifications of assault under Article 128, UCMJ, 10 U.S.C. § 928, and two additional violations of the general article under Article 134, UCMJ. Those charges are not at issue in this appeal.

argument, focusing solely on whether Appellant produced, possessed, or distributed child pornography. After the defense highlighted this failure in its closing argument, the Government tried to salvage the Article 134 charges during rebuttal with the following statement:

> And finally, with respect to prejudicial to good order and discipline, let me get this right. That it's okay—this is what the defense argument is, it's okay to have child pornography on your phone as a military member, just that nobody knows about it, so it's certainly not prejudicial to good order and discipline. It is prejudicial to good order and discipline to have child pornography on your phone. We do not allow our members to commit crimes and have criminal possessions on our phone. That's—the argument that for some reason, you know, that is not prejudicial to good order and discipline for our members to commit crimes as long as it's quiet and in secret, we would all agree that what you do on your private time matters. We're held accountable for what we do o our private. And to get up here and say, Members, to have child pornography on your phone and distribute is not prejudicial to good order and discipline (indiscernible) this, was her mama the military, no, but the people he was distributing these messages—these images to in the military, no. How does that look? How does that look? It's not prejudicial to good order and discipline because, I don't know, you know, because he had it but it was just on his phone, it doesn't hurt us, it's not—it doesn't impact the military, it's ridiculous. It's ridiculous. Keep that line. Keep that line. Do not get smudged.

Transcript of Record at 723–24, *United States v. Richard*, No. 22-0091 (C.A.A.F. 2022) (errors in original).

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of all three specifications related to the production, possession, and distribution of child pornography in violation of Article 134, UCMJ, and one specification of assaulting IB, in violation of Article 128, UCMJ.[3] The court-martial sentenced Appellant

---

[3] The panel found Appellant not guilty of all the remaining charges unrelated to Appellant's interactions with IB.

to a bad-conduct discharge and confinement for thirty days. After the convening authority took no action on the case, the AFCCA affirmed the findings and the sentence. *United States v. Richard*, No. ACM 39918, 2021 CCA LEXIS 632, at *2, 2021 WL 5505091, at *1 (A.F. Ct. Crim. App. Nov. 24, 2021) (unpublished). We granted review to answer the question:

> Whether the evidence of prejudice to good order and discipline for the Article 134, UCMJ, offenses was legally sufficient.

*United States v. Richard*, 82 M.J. 235 (C.A.A.F. 2022) (order granting review).

## II. Discussion

The general article has governed the conduct of American servicemembers since the Continental Congress enacted the first domestic Articles of War in 1775.[4] And the Supreme Court has recognized that the military has, by necessity due to its unique and critical mission, "developed laws and traditions of its own during its long history." *Parker v. Levy*, 417 U.S. 733, 743 (1974). Nevertheless, Article 134, UCMJ, is a statutory criminal offense, and as such, this Court has recognized that the Constitution demands that the Government prove *every* element of an Article 134 offense— including the second or "terminal" element—beyond a reasonable doubt. *United States v. Phillips*, 70 M.J. 161, 165 (C.A.A.F. 2011); *United States v. Fosler*, 70 M.J. 225, 226 (C.A.A.F. 2011); *United States v. Wilcox*, 66 M.J. 442, 448 (C.A.A.F. 2008) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). Thus, in this case, for Appellant's Article 134 convictions to be legally sufficient, the Government must have carried its burden of proving that Appellant's

---

[4] *See* Article L of the American Articles of War of 1775, *reprinted in* William Winthrop, *Military Law and Precedents* 957 (2d ed., Government Printing Office 1920) (1895) ("All crimes, not capital, and all disorders and neglects, which officers and soldiers may be guilty of, to the prejudice of good order and military discipline, though not mentioned in the articles of war, are to be taken cognizance of by a general or regimental court-martial, according to the nature and degree of the offence, and be punished at their discretion.").

misconduct was to the prejudice of good order and discipline in the armed forces.

## A. Standard of Review

This Court reviews issues of legal sufficiency de novo. *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019). In determining whether a conviction was legally sufficient, this Court asks whether, viewed "in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (internal quotation marks omitted) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). It is well established that the terminal element of the general article is an "'essential element of the offense.'" *Phillips*, 70 M.J. at 164 (quoting *United States v. Williams*, 8 C.M.A. 325, 327, 24 C.M.R. 135, 137 (1957)). To whatever extent some of this Court's (or its predecessor's) older cases may have treated the terminal element of Article 134, UCMJ, as something less than an essential element, those cases have been expressly overruled. *See, e.g.*, *United States v. Miller*, 67 M.J. 385, 389 (C.A.A.F. 2009); *United States v. Jones*, 68 M.J. 465, 470–71 (C.A.A.F. 2010); *Fosler*, 70 M.J. at 232–33.

## B. Analysis

To determine whether the Government established that Appellant's misconduct prejudiced good order and discipline in the armed forces, we must first decide what that phrase means, or at least what it requires in this case. Despite the general article's long history as part of the American military justice system—and the even longer history of the British antecedents from which the general article was derived[5]—the phrase "to the prejudice of good order and discipline" has avoided precise definition, either by Congress, the judiciary, or the President. In the absence of any additional explanation, many courts and observers have recognized that the language in the general article is remarkably vague. As a former Chief Judge of our predecessor Court observed before

---

[5] *See Parker*, 417 U.S. at 745–46 (tracing the history of Article 134, UCMJ*); see also* Gilbert G. Ackroyd, *The General Articles, Articles 133 and 134 of the Uniform Code of Military Justice*, 35 St. John's L. Rev. 264, 266–78 (1961) (same).

he joined the bench, the "awesome generality" of the general article's language "would seem in many ways to defy explanation, and whose true meaning might baffle the examination of the most skilled lawyer." Robinson O. Everett, *Article 134, Uniform Code of Military Justice—A Study in Vagueness*, 37 N.C. L. Rev. 142, 142 (1959).

In the 1970s, this vagueness caused both the. United States Court of Appeals for the Third Circuit and the United States Court of Appeals for the District of Columbia Circuit to strike down the general article as violating the Fifth Amendment's guarantee of due process. *Levy v. Parker*, 478 F.2d 772, 796 (3d Cir. 1973), *rev'd*, 417 U.S. 733 (1974); *Avrech v. Sec'y of Navy*, 477 F.2d 1237, 1244 (D.C. Cir. 1973), *rev'd*, 418 U.S. 676 (1974). The Supreme Court reversed those decisions, but in doing so, it expressly relied on the fact that our predecessor Court had "narrowed the very broad reach of the literal language" of Article 134, UCMJ, such that it only applies "to conduct that is 'directly and palpably—as distinguished from indirectly and remotely—prejudicial to good order and discipline.'" *Parker*, 417 U.S. at 753, 754 (quoting *United States v. Sadinsky*, 14 C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964)). The Supreme Court took further comfort from the fact that the President had expressly codified that limitation in the *Manual*, *see Parker*, 417 U.S. at 753 & n.22 (citing *MCM* pt. IV, para. 213c (1969 ed.)), a restriction that remains in the *Manual* to this day, *MCM* pt. IV, para. 91.c. (2019 ed.).

Yet, despite having exhausted our traditional sources of constitutional, statutory, and judicial authority, we are still left with the question whether the Government established that Appellant's misconduct was directly and palpably "to the prejudice of good order and discipline in the armed forces." Article 134, UCMJ. In *Parker*, the Supreme Court observed "that the longstanding customs and usages of the services impart accepted meaning to the seeming imprecise standards" of the general article. 417 U.S. at 746–47. But the procedural history of this case indicates that—at least among the various participants in Appellant's trial and appeal—there was no "accepted meaning" of what it means for conduct to be "to the prejudice of good order and discipline." Both at Appellant's court-martial and before the AFCCA, the

Government prevailed on arguments that would seem more appropriate for charges brought under clause 2 of the general article's terminal element—that Appellant's conduct was of a nature to bring discredit upon the armed forces. But, as we have explained before, the three clauses of the terminal element are separate and distinct, and " 'disorders and neglects to the prejudice of good order and discipline' is not synonymous with 'conduct of a nature to bring discredit upon the armed forces.' " *Fosler*, 70 M.J. at 230.

Beyond noting that the three clauses of the terminal element are not interchangeable, Appellant makes no effort to define conduct that is prejudicial to good order and discipline because he argues that the Government's failure to proffer any evidence in support of the terminal element renders his convictions legally insufficient. Appellant observes that there is no evidence in the record that anyone in the military was aware of his misconduct or that his misconduct had *any* effect on good order and discipline—regardless of exactly what that phrase means—let alone a "direct and palpable" one.

The Government concedes that there is no clear definition of "good order and discipline," and it does not dispute Appellant's description of the record of trial, but it argues that it proved the terminal element in this case because the evidence established that Appellant "used his military status and the resources he received from the military to effectuate the commission of his crimes." Brief for Appellee at 15, *United States v. Richard*, No. 22-0091 (C.A.A.F. Apr. 25, 2022). Citing historical cases, the Government argues that crimes committed by servicemembers against civilians, that involve the use of government-issued equipment, or are committed on military installations prejudice good order and discipline even when performed in secret. The Government acknowledges that this Court has held that no misconduct can be considered per se prejudicial to good order and discipline, but the Government argues that our predecessor Court's decision in *United States v. Davis* supports Appellant's Article 134 convictions because some misconduct—including Appellant's actions in this case—"by its unlawful nature, *tends* to prejudice good order or to discredit the service." 26 M.J. 445, 448 (C.M.A. 1988) (emphasis added).

The Government's expansive view of the scope of conduct that is "to the prejudice of good order and discipline"—essentially that any misconduct that has a nexus to the military qualifies—suggests that it might be necessary for us to better define such conduct, something that would be well within this Court's authority to do. *See, e.g.*, *Wooden v. United States*, 142 S. Ct. 1063, 1069 (2022) (defining the term "occasions" in 18 U.S.C. § 924(e)(1)); *DePierre v. United States*, 564 U.S. 70, 72 (2011) (defining the term "cocaine base" in 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii)); *United States v. Santos*, 553 U.S. 507, 509 (2008) (defining the term "proceeds" in 18 U.S.C. § 1956(a)(1)); *United States v. Granderson*, 511 U.S. 39, 42 (1994) (defining the term "original sentence" in 18 U.S.C. § 3565(a)). But before taking that step, we find it instructive to return to what is, to the best of our knowledge, the source of the direct and palpable limitation that our predecessor Court adopted and that the President codified in the *Manual*: Colonel William Winthrop's treatise on American military law. *See* Winthrop, *supra*, at 723 (noting that the general article is "confined to cases in which the prejudice is *reasonably direct and palpable*" rather than cases that are "*indirectly* or *remotely*" prejudicial); *see also United States v. Snyder*, 1 C.M.A. 423, 425–26, 4 C.M.R. 15, 17–18 (1952) (citing Winthrop's treatise to determine whether the appellant's Article 134 convictions were legally sufficient).

In his seminal treatise, Winthrop wrote that "prejudice," as used in the general article, means "detriment, depreciation, or an injuriously affecting." Winthrop, *supra*, at 723. He further explained that because the cases contemplated by the general article are generally military neglects and disorders, "good order" means the "condition of tranquility, security and good government" of the military service. *Id.* Even when the general article is applied to civil wrongs, Winthrop noted that the accused's misconduct must still "actually prejudic[e] military discipline." *Id.*

Winthrop's definition of conduct that prejudices good order and discipline—which the United States Army Court of Military Review adopted more than four decades ago, *see United States v. Evans*, 10 M.J. 829, 830 (A.C.M.R. 1981) ("The misconduct must be activity against 'good order' which affects the 'condition of tranquility, security, and good

government of the military service.'" (quoting *Snyder*, 1 C.M.A. at 426, 4 C.M.R. at 15 (quoting Winthrop, *supra*, at 723))—comports with our own understanding of clause 1 of the terminal element. It is also consistent with the various more detailed explanations that the President has provided in the *Manual* to distinguish conduct that does prejudice good order and discipline from conduct that does not. *See, e.g.*, *MCM* pt. IV, para. 99.c.(1) (2019 ed.) (explaining when extramarital sexual conduct qualifies as an Article 134 offense under clause 1 of the terminal element); *MCM* pt. IV, para. 101.c.(1) (explaining when contact between officers and enlisted servicemembers qualifies as an Article 134 offense under clause 1 of the terminal element). In light of this existing guidance about what the government must prove to establish that conduct prejudiced good order and discipline, we see no need to formally define that phrase, but instead proceed with those well-known hallmarks of good order and discipline in mind.

Based on the record here, we conclude that Appellant's Article 134 convictions were not legally sufficient. As an initial matter, the Government failed to proffer any evidence that Appellant's misconduct had any negative effect—indeed, any effect at all—on the good order and discipline of the armed forces. No one in the military had any idea that Appellant was producing child pornography in his barracks dorm room, and there is no evidence that this misconduct interfered in any way with any of the traditional hallmarks of good order and discipline identified by Winthrop in his treatise or the President in the *Manual*.

The Government's arguments about Appellant's military status and his misuse of military property cannot cure the Government's failure to proffer evidence of *actual* harm to good order and discipline. Viewed in the best possible light, these are purely speculative arguments about how Appellant's misconduct *might* have prejudiced good order and discipline that cannot establish legal sufficiency. *See Wilcox*, 66 M.J. at 451 (holding that "tenuous and speculative" theories about how the appellant's conduct prejudiced good order and discipline failed to establish the terminal element). But viewed less charitably, these arguments—which presume prejudice to good order and discipline based on factors such

as the location of the offense or the military status of the accused—urge a return to exactly the kind of per se rules that this Court has expressly rejected as constitutionally deficient. *See Phillips*, 70 M.J. at 164–65 ("The use of conclusive presumptions to establish the elements of an offense is unconstitutional because such presumptions conflict with the presumption of innocence and invade the province of the trier of fact."). We decline the Government's invitation to turn back the clock on our treatment of the general article.

To be fair, the Government cites various historical cases both from this Court and from our predecessor that would seem to support its argument for a more relaxed approach toward proving the general article's terminal element. What the Government's reliance on these older cases neglects, however, is the sea change that occurred in this Court's Article 134 jurisprudence between 2008 and 2011. As this Court recognized in *Fosler,* by 2011 "the jurisprudence of the Supreme Court and our own Court ha[d] changed." 70 M.J. at 232. To whatever extent older cases suggest that prejudice to good order and discipline can be assumed or implied based on the misconduct of the accused, those cases have been overruled.[6] "To satisfy the due process requirements of the Fifth Amendment, the Government must prove beyond a reasonable doubt every element of the charged offense." *Wilcox*, 66 M.J. at 448 (citing *In re Winship*, 397 U.S. at 364). That constitutional mandate applies just as much to the terminal element of Article 134, UCMJ, as it does to every other element of a criminal offense. *Phillips*, 70 M.J. at 165 ("The terminal element must be proved beyond a reasonable doubt like any other element. Whether any given conduct violates clause 1 or 2 is a question for the trier of fact to determine, based upon all the facts and circumstances; it

---

[6] Appellant argues that for this reason, *Davis*, 26 M.J. 445, should also be overruled "to purge an anomaly in an otherwise uniform progression towards requiring proof of the terminal element." Brief for Appellant at 33, *United States v. Richard*, No. 22-0091 (C.A.A.F. Mar. 25, 2022). Because the holding in *Davis* is unrelated to the specific sentence cited by the Government (and quoted by the AFCCA), we see no reason to overrule *Davis*. But nothing in *Davis* undermines the fundamental requirement that the government must prove all elements—including the terminal element of the general article—beyond a reasonable doubt.

cannot be conclusively presumed from any particular course of action.").

### III. Conclusion

Because no evidence established the terminal element of the three specifications for violating Article 134, UCMJ, we conclude that no reasonable factfinder could have found the essential elements of those offenses beyond a reasonable doubt. The decision of the United States Air Force Court of Criminal Appeals is reversed, and the findings with respect to those specifications for production, possession, and distribution are set aside and dismissed. The decision is affirmed as to the remaining charge. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the AFCCA to either reassess the sentence based on the affirmed findings or order a sentence rehearing.

Judge MAGGS, with whom Senior Judge STUCKY joins, concurring.

I concur in the Court's opinion holding that the evidence admitted at trial was legally insufficient to sustain findings that Appellant is guilty of three specifications alleging that he violated Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018), by producing, possessing, and distributing child pornography. The Government introduced evidence that Appellant sponsored a sixteen-year-old German girl's entry onto Ramstein Air Base, took her into his dorm room, recorded a video of her engaging in sexually explicit conduct, stored the video and nude photos of her on his phone, and then posted nude photos of her on the internet. The Government, however, made essentially no effort at trial to prove that this conduct was to the prejudice of good order and discipline in the armed forces, as the specifications at issue alleged. Because our precedent has established that the Government must prove the "good order and discipline" element of Article 134, UCMJ, offenses with evidence, *United States v. Gaskins*, 72 M.J. 225, 233 (C.A.A.F. 2013), the Court correctly sets aside the findings of guilt on these specifications. The offenses of which Appellant was charged were not "of necessity incapable of proof" but the Government failed in this case because it "did not prove them." *Varney v. Ditmars*, 111 N.E. 822, 826 (1916) (Cardozo, J., dissenting).

I write separately to add a few words to what the Court says about the pressing question of what constitutes "good order and discipline" within the meaning of Article 134, UCMJ. Although cases involving this term have arisen since the inception of the United States military, neither Congress, nor the President, nor this Court, nor the Supreme Court has supplied a comprehensive definition. The reason is probably that no comprehensive definition is possible. Some terms in law defy general definition, and are best explained not by describing everything that they include but instead through a process of identifying specific things that they exclude.[1] In my

---

[1] Professor Robert Summers influentially identified "good faith" as such a term, arguing that "good faith, as used in the case law, is best understood as an 'excluder'—it is a phrase which has no general meaning or meanings of its own, but which serves to exclude many heterogeneous forms of bad faith." Robert S.

view, "good order and discipline" is such a term. Good order and discipline in the military must be understood as a state of affairs in which a variety of heterogeneous conditions are not prejudiced.

What are the conditions of good order and discipline in the armed forces? No exhaustive list yet exists. The Court observes that Colonel William Winthrop mentioned three in his influential treatise, namely, "the condition[s] of tranquility, security, and good government of the military service." William Winthrop, *Military Law and Precedents* 723 (2d ed., Government Printing Office 1920) (1895).[2] But these are not the only conditions. As the Court also properly recognizes, the President has identified other, more specific, conditions in the *Manual for Courts-Martial, United States* (2019 ed.). For instance, the President has specified that "[e]xtramarital conduct that is directly prejudicial to good order and discipline includes conduct that has an obvious, and measurably divisive effect on *unit or organization discipline, morale, or cohesion*, or is clearly detrimental *to the authority or stature of or respect toward a Servicemember*, or both." *Id.* pt. IV, para. 99.c.(1) (emphasis added). Similarly, the President has explained that "contact or association between officers and enlisted persons" may violate Article 134, UCMJ, if "[t]he facts and circumstances . . . lead a reasonable person experienced in the problems of military leadership to conclude that the

---

Summers, *"Good Faith" in General Contract Law and the Sales Provisions of the Uniform Commercial Code*, 54 Va. L. Rev. 195, 196 (1968). Professor Summers also noted that Professor H. L. A. Hart had identified the term "voluntary" as another such term, asserting that " 'the word "voluntary" in fact serves to exclude a heterogeneous range of cases such as physical compulsion, coercion by threats, accidents, mistakes, etc., and not to designate a mental element or state.' " *Id.* at 201–02 n.33 (quoting H. L. A. Hart, *The Ascription of Responsibility and Rights*, 49 Proceedings of the Aristotelian Soc'y 171, 180 (1949)).

[2] In *United States v. Karl*, 3 C.M.A. 427, 431, 12 C.M.R. 183, 187 (1953), this Court upheld a finding that the accused had violated Article 134, UCMJ, by selling blank pass forms, concluding that the accused's actions were to the prejudice of each of the three conditions of good order and discipline that Winthrop identified in his treatise.

good order and discipline of the armed forces has been prejudiced by their tendency to compromise *the respect of enlisted persons for the professionalism, integrity, and obligations of an officer.*" *Id.* pt. IV, para. 101.c.(1) (emphasis added).

How are such conditions of good order and discipline identified? The Supreme Court supplied the answer in *Parker v. Levy*, 417 U.S. 733 (1974), a case which upheld a finding that an Army officer violated Article 134, UCMJ, by making disloyal statements to enlisted soldiers. *Id.* at 738, 760–61. In rejecting an argument that Article 134, UCMJ, was void for vagueness, the Supreme Court reasoned that "longstanding customs and usages of the services impart accepted meaning to the seemingly imprecise standards of [Article] 134." *Id.* at 746–47. The various conditions of good order and discipline mentioned by Winthrop in his treatise and by the President in the provisions quoted above all appear to meet *Parker's* criterion of being established by longstanding customs and usages. Other conditions may meet this criterion as well.

Commentators have expressed important concerns about using the term "good order and discipline" in a criminal statute when the term lacks a specific, authoritative definition. *See, e.g.*, Jeremy S. Weber, *Whatever Happened to Military Good Order and Discipline?*, 66 Clev. St. L. Rev. 123, 132, 157 (2017). But Congress has the responsibility for the wording of the articles of the UCMJ. This Court cannot revise the clauses of Article 134, UCMJ, so that they are more readily defined, nor can it adopt definitions of its own choosing that would constrain the language of the statute. Instead, the Court is limited to a role that the Supreme Court stressed in *Parker*, namely, supplying "specificity by way of examples of the conduct which they cover" as it decides cases under Article 134, UCMJ. 417 U.S. at 754.