*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

## UNITED STATES
Appellee

**v.**

## Matthew P. LEIPART, Technical Sergeant
United States Air Force, Appellant

**No. 23-0163**
Crim. App. No. 39711
Misc. Dkt. No. 2021-03

Argued January 24, 2024—Decided August 1, 2024

Military Judges: Jefferson B. Brown (arraignment and motions hearing), Joseph S. Imburgia (trial), and Christina M. Jimenez (*DuBay* hearing)

For Appellant: *Captain Samantha M. Castanien* (argued); *Major David L. Bosner and Megan P. Marinos*, Esq. (on brief); *Lieutenant Colonel Allen S. Abrams*.

For Appellee: *Captain Kate E. Lee* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel James P. Ferrell*, and *Mary Ellen Payne*, Esq. (on brief); *Major Zachary T. West*.

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS and Judge HARDY joined. Chief Judge OHLSON filed a separate opinion concurring in the judgment, in which Judge JOHNSON joined.

_____

Judge SPARKS delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas, of one specification of aggravated assault, two specifications of assault consummated by a battery, and two specifications of wrongfully communicating threats in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934. Contrary to his pleas, Appellant was convicted of two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The adjudged and approved sentence provided for a reduction to E-1, twenty-one years of confinement, forfeiture of all pay and allowances, and a reprimand. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence as approved by the convening authority. *United States v. Leipart*, No. ACM 39711, Misc. Dkt. No. 2021-03, 2023 CCA LEXIS 39, at *2, *88, 2023 WL 415990, at *1, *28 (A.F. Ct. Crim. App. Jan. 26, 2023) (unpublished).

We granted review of the following two issues:

I. Whether trial defense counsel were ineffective for, inter alia, allowing the military judge to consider Appellant's guilty plea when determining whether Appellant was guilty of the litigated offenses.

II. Whether the trial counsel's "clear error" in findings argument—leveraging Appellant's guilty plea to prove his guilt of the litigated offenses—was harmless beyond a reasonable doubt.

*United States v. Leipart*, 83 M.J. 448 (C.A.A.F. 2023) (order granting review).

---

[1] The military judge acquitted Appellant of one specification of communicating a threat, two specifications of sexual assault, and one specification of the lesser included offense of attempted sexual assault.

For Issue I, we conclude that trial defense counsel's performance was not deficient. For Issue II, we conclude that trial counsel's statements amounted to plain, obvious error, but the error was harmless beyond a reasonable doubt.

## I. Background

In January 2016, Appellant and KC met on an online dating site. At the time, Appellant was stationed in Missouri, and KC was a lawyer living in Perth, Australia. In March 2016, KC flew to the United States to visit Appellant, during which time she became pregnant with their child. After approximately two weeks, KC returned to Australia.

In May 2016, KC visited Appellant a second time in Missouri and stayed until July 2016. In August 2016, KC returned to Missouri for a third time. In November 2016, KC gave birth to their son in Missouri. In December 2016, Appellant, KC, and their son flew to Australia together. Appellant returned to the United States in January 2017, while KC and their son remained in Australia.

In May 2017, Appellant visited KC in Australia. While in Australia, Appellant physically assaulted KC by grabbing and choking her with his hand and arm, holding a screwdriver at her neck, and striking her on the head with his hand. Appellant also threatened KC with physical injury approximately twenty times. In June 2017, Appellant returned to the United States.

In early August 2017, KC reported the physical assaults to the Australian police. Later that month, the Air Force Office of Special Investigations (OSI) called KC regarding Appellant, and she again reported the physical assaults that had occurred in Australia. In September 2017, during an interview with OSI, KC disclosed that Appellant had sexually assaulted her several times over the course of their relationship.

At trial, Appellant faced five specifications of sexual assault, two specifications of assault consummated by a

battery, one specification of aggravated assault, and three specifications of communicating a threat. Appellant pled not guilty to the three specifications of sexual assault and two specifications of communicating a threat. Appellant pled guilty to grabbing and choking KC with his hand and arm, to holding a screwdriver to her neck, to striking her on the head with his hand, and to threatening to injure her.

After the providence inquiry, the military judge accepted Appellant's pleas. The parties then began the litigated proceedings and gave opening statements. During the defense's opening statement, civilian trial defense counsel, Mr. DC, stated:

> Now by 15 August, OSI is going to be involved and [KC's] story is going to take some more turns. She's going to tell OSI, specifically, that there was never any abuse in Missouri. The very first time OSI talks to her, in their efforts to be thorough, they ask her some detailed questions and she's going to tell them, very specifically, [hand pounded on the table] and clearly, there was never any abuse in Missouri. Now that's relevant, obviously, to the Additional Charge I, as four of the sexual assault allegations supposedly occurred in Missouri. In that first statement to OSI, she's not going to report any sexual assaults, at all. Now at this point, we're literally three— she's had three interactions with law enforcement, at this point—a lawyer. Now then, I will note, in fairness, that the 15 August statement did in fact include statements that essentially covered the charges subject to the mixed guilty plea, for the most part. Okay.
>
> . . . .
>
> . . . we're going to ask you at the end of this particular case to enter a not guilty finding as to the remaining charges and specifications. Thank you.

After Mr. DC concluded his opening statement, he had the following colloquy with the military judge:

MJ2:  Thank you.
      Defense, putting back on my judge hat—

[DC:] Yes, sir.

MJ2: —you had mentioned—

. . . .

MJ2: But you had mentioned in your opening statement about the mixed pleas, the guilty pleas, and one of the questions I was going to ask you, regardless of that, is your position—from the defense team—on consideration, or the fact-finder being aware that there has been previous guilty pleas? I think your opening statement probably answered the question, because now you've alerted to me in your opening statement. But, I still want to give you the opportunity to bring that up.

[DC:] Yeah, I think in a mixed plea in front of a panel type fact-finder, sometimes we would have the optionality of certainly disclosing to the members the existence of the plea. I thought that it was appropriate in the opening statement here, because you're going to hear prior inconsistent statements in impeachment, based on the 15 August statement to Ms. [KC]. And in that particular statement, the reference in opening statement was, she talks about the content of the mixed plea, but not these additional charges and specifications. So to the extent, I wasn't necessarily asking you to, as the fact-finder, to necessarily consider that mixed plea. But, I was alerting you to the fact of what you're going to hear on the cross-examination, if she made statements that are similar to that. I hope that answers your question, sir.

MJ2: It does.

[DC:] I'm not trying to be nonresponsive.

MJ2: No, that's responsive.

[DC:] Okay.

MJ2: That answers the question.
Anything else on that issue from you the government?

CTCl: No, Your Honor, I was going to ask the Court the same question, so thank you.

MJ2: So we're operating in a world where I'm aware of the previous guilty plea?

[DC:] Of course, sir; yes.

MJ2: I mean, obviously I am as the judge but even as the fact-finder now—

[DC:] Yes, sir.

MJ2: —I'm aware of it.

[DC:] Then obviously, I certainly appreciate your thoroughness in compartmentalizing your various functions here, but I agree that we're in that universe now.

During the Government's closing argument on the merits, without objection, trial counsel argued:

The defense counsel asked you to operate in this world where you know that he pled guilty to a number of offenses. So right now, I want to talk about how that goes towards the victim's credibility, because as you're standing here operating in this world where he has admitted to crimes against Ms. [KC], the government believes you can use that in assessing her credibility on the stand. Whether or not she's telling the truth for the 120 offenses.

So you know that she's telling the truth when she says the accused threatened her. You know that, Your Honor. Undeniable. You know that she's telling the truth about her being choked by the accused. Undeniable. You know that she's telling the truth about her being threatened with a screwdriver. That is undeniable. You know she's telling the truth about being hit in the back of the head by the accused. You can't deny it. You know that even after she sat right where she's sitting right now, and heard the accused plead guilty, she still continued to testify—but she could have left.

. . . .

She had to get up here and talk about sex, unwanted sex from the accused in front of a room of strangers. She didn't have to. No one was

forcing her to and that of itself, Your Honor, is obviously not a sole indicator of whether or not she's telling the truth or not but taken into consideration that she knows the accused has already pled guilty to a number of offenses, that gives her more motivation to drop out, if she was telling—if she was lying, but she didn't.

. . . .

Your Honor, it's the government's position that you really have to find her to be an evil person if you think she's going to come here and testify and lie about someone raping her. I mean, because that's what an evil person does. That she had such motivation to lie about being raped, but not lie about the other charges that the accused has pled guilty to. And so, when defense is asking you or pushing forth this theory that she's a liar. They're really saying she's a partial liar—that she's lied about some things, but not lied about others. And that makes it even more difficult for you when you're looking at her saying, "Okay. You're a liar. Well, did you lie about this, but why would you lie about that?"

After trial, the lower court ordered a post-trial hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to answer, inter alia, whether trial defense counsel was ineffective by allowing the military judge to consider Appellant's guilty plea. *United States v. Leipart*, No. ACM 39711, Misc. Dkt. No. 2021-03, 2021 CCA LEXIS 595, at *3-5, 2021 WL 5113965, at *2 (A.F. Ct. Crim. App. June 14, 2021) (order). In his declaration Mr. DC stated:

There is no indication the Military Judge used the providence inquiry for any improper basis. I do not believe there was uncharged misconduct in the providence inquiry. There may have been alternative theories for the admissibility of many aspects of the providence inquiry. The purpose of the mixed plea was because the evidence on those specifications was uncontroverted and to obtain credibility with the military judge. Permitting the judge to consider [Appellant's] testimony for any

> proper purpose he desired seemed in [Appellant's]
> best interest.

*Leipart*, 2023 CCA LEXIS 39, at *32-33, 2023 WL 415990, at *11 (alterations in original).

During the *DuBay* hearing, "Mr. DC conceded that if he had the situation to do over again, he 'probably' would not make the same decision." *Id.* at *33, 2023 WL 415990, at *11. Detailed counsel Captain CB "stated that he was not part of any prior discussion regarding the military judge's awareness of the guilty plea, and that he was 'confused' by Mr. DC's agreement to it because it 'immediately corroborated' KC." *Id.* at *34, 2023 WL 415990, at *11. Appellant's other civilian trial defense counsel, Mr. JC, "recalled having a pretrial conversation with Mr. DC about the military judge's awareness of the guilty plea during findings, but otherwise provided little information on the subject." *Id.* at *34, 2023 WL 415990, at *11.

At the lower court, Appellant argued that Mr. DC's agreement for the military judge "to 'consider' his guilty pleas as the trier of fact was 'patently erroneous' and without any useful purpose for the [d]efense." *Id.* at *32, 2023 WL 415990, at *11. Appellant contended that he was "prejudiced because the guilty plea corroborated KC's allegations regarding the Article 128 and 134, UCMJ, offenses, and thereby tended to enhance her credibility as to the litigated specifications." *Id.* at *32 , 2023 WL 415990, at *11. Notably, the lower court observed:

> On appeal, and at the *DuBay* hearing, the Defense repeatedly referred to Mr. DC having allowed the trial judge to "consider" Appellant's guilty plea and providence inquiry during findings. However—notwithstanding that Mr. DC, to an extent, and Capt CB, to a greater extent, appear to have accepted Appellant's characterization— the record does not indicate that, at the time, Mr. DC agreed the trial judge would "consider" the guilty plea, nor is that what the trial judge proposed to do. Instead, the trial judge indicated that he would be "aware" of the guilty plea, not that he would consider or use the guilty plea

8

during his deliberation on findings. This distinction is significant.

*Id*. at \*34-35, 2023 WL 415990, at \*11. Ultimately, the lower court concluded:

> Although we perceive a reasonable argument that Mr. DC's action did not fall measurably below the expected standard, given the weak defense trial counsel offered in their declarations and at the *DuBay* hearing for their performance in this regard, we decline to decide whether that performance was constitutionally deficient. Instead, we hold Appellant has failed to demonstrate a reasonable probability of a more favorable result in the absence of any such deficiency, given the absence of evidence that the trial judge misused Appellant's guilty pleas.

*Id*. at \*37, 2023 WL 415990, at \*13.

## II. Analysis

### A. Ineffective Assistance of Counsel

The first assigned issue asks whether Appellant's defense counsel provided ineffective assistance by allowing the military judge to consider Appellant's guilty plea. We review de novo allegations of ineffective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). To establish that ineffective assistance of counsel occurred, an appellant must prove both that the defense counsel's performance was deficient, and that the deficiency caused prejudice. *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). With respect to the first prong of this test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and "[a]s to the second prong, a challenger must demonstrate a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Id*. (second alteration in original) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at

689, 694). Further, a military judge is presumed to know the law and apply it correctly, absent clear evidence to the contrary. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007).

In *United States v. Flores*, 69 M.J. 366, 368 (C.A.A.F. 2011), the appellant pleaded guilty to two specifications but pleaded not guilty to four other unrelated specifications. After the military judge accepted the guilty pleas, the government moved forward to prove those four specifications. *Id*. at 369. The military judge convicted the appellant of those specifications. *Id*. at 368. In her closing argument on the merits, the trial counsel made two comments about what the appellant told the military judge during the earlier providence inquiry. *Id*. at 369-71. The trial counsel specifically referred to the statements made by the appellant during the plea inquiry and argued that those statements reinforced the credibility of a key government witness. Concluding that the trial counsel erred, we held that "[a] guilty plea and related statements to one offense cannot be admitted to prove any element of a separate offense." *Id*. at 369. Moreover, a military judge "must not later rely on those statements as proof of a separate offense." *Id*. at 369-70. "To do so would compel an accused to incriminate herself in the separate criminal proceeding." *Id*. at 370.

Appellant's underlying contention is that Mr. DC, by allowing the military judge to consider his guilty pleas when deliberating on the findings, usurped his right to remain silent as to the contested offenses. Although our review for allegations of ineffective assistance of counsel is de novo, we agree with the lower court's well-reasoned analysis:

> Absent clear evidence to the contrary, a military judge is presumed to know and to follow the law. *Erickson*, 65 M.J. at 225. We find no clear evidence to the contrary in this record. At no point did the trial judge indicate he would *consider* or *use* either the guilty plea itself or Appellant's providence inquiry during the contested portion of

the trial. On the contrary, the trial judge had advised Appellant he would not do so.

Notwithstanding trial defense counsel's post-trial statements, at the time, Mr. DC indicated that he "wasn't necessarily asking [the trial judge] to, as the fact-finder, to necessarily consider that mixed plea." Instead, Mr. DC referenced the fact that, in a mixed-plea case with court members, the military judge would typically ask the defense whether the accused wanted the members to be "informed" of the guilty pleas. *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook* (*Benchbook*), ¶ 2-5-4 (10 Sep. 2014). The purpose of such information is not, of course, that the court members should use the fact of the guilty plea as evidence for their findings as to contested offenses. In Appellant's case, as Mr. DC explained at the time, the evident purpose of allowing the trial judge to be "aware" of the mixed plea was simply to help orient the trial judge, as factfinder, to how the expected evidence related to both the contested and uncontested specifications, as described in the Defense's opening statement. Had the trial judge not clarified that he was "aware" of the guilty plea in his role as factfinder, such references to the "mixed pleas"—whether by the Defense or the Government—could be objectionable references to matters not in evidence and not reasonably anticipated to be entered into evidence. Mr. DC trusted that the trial judge would not use this information "inappropriately," and there is no clear indication the trial judge did misuse it.

*Leipart*, 2023 CCA LEXIS 39, at \*36-38, 2023 WL 415990, at \*12 (alteration in original).

We are ultimately not persuaded that Mr. DC's performance was deficient. Importantly, the record does not indicate that Mr. DC agreed that the military judge would consider the guilty plea, nor is that what the military judge stated he would do. As Mr. DC explained at the time, the purpose of allowing the military judge to be "aware" of the mixed plea was to help familiarize the military judge, as factfinder, to how the expected evidence

related to both the contested and uncontested specifications, as described in the defense's opening statement. There is no indication in the record that Mr. DC was allowing the military judge to use Appellant's guilty plea and related statements to prove any element of the contested offenses. The fact that the military judge was aware of the mixed plea does not implicate the concerns we addressed in *Flores*. Under these facts, we conclude that the trial defense counsel's performance was not deficient.

### B. Improper Argument

At the lower court, Appellant argued, in relevant part, that trial counsel's closing argument was improper because it requested that the military judge inappropriately use Appellant's prior guilty pleas to find him guilty of the sexual assault charges. *Id*. at *69-70, 2023 WL 415990, at *23. The lower court agreed, finding that trial counsel clearly erred by using Appellant's guilty plea and providence inquiry to bolster the Government's argument that Appellant was guilty of the contested sexual offense. *Id*. at *70, 2023 WL 415990, at *23. However, the lower court found Appellant was not prejudiced because there was no clear evidence that the military judge improperly considered trial counsel's argument. *Id*. at *71-74, 2023 WL 415990, at *24. On appeal to this Court, Appellant agrees with the lower court's finding of clear error but contends that the lower court incorrectly found the error was harmless beyond a reasonable doubt.

"We review prosecutorial misconduct and improper argument de novo and where . . . no objection is made, we review for plain error." *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). Under plain error review, the appellant bears the burden to demonstrate error that is clear or obvious and results in material prejudice to his substantial rights. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). "[W]here a forfeited constitutional error was clear or obvious, 'material prejudice' is assessed using the 'harmless beyond a reasonable doubt' standard . . . ." *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F.

2019) (citations omitted). "That standard is met where a court is confident that there was no reasonable possibility that the error might have contributed to the conviction." *Id.* (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005)).

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "In a guilty plea context, a military judge who has advised an accused that she is waiving her right against self-incrimination only to those offenses to which she is pleading guilty cannot later rely on those statements as proof of a separate offense." *Flores*, 69 M.J. at 368. Neither the guilty plea itself nor any related statements as to one offense may be "admitted to prove any element of a separate offense." *Id.* at 369. "To do so would compel an accused to incriminate herself in the separate criminal proceeding." *Id.* at 370.

We agree with Appellant that trial counsel committed a clear error when he used Appellant's guilty plea and providence inquiry to bolster the Government's argument that Appellant was guilty of the contested sexual offenses. Trial counsel appears to have relied on the defense's agreement that the trial participants were "operating in a world" where the military judge was "aware" of the guilty pleas. But the defense's agreement that the military judge was aware of the guilty pleas was not an agreement that the Government could use Appellant's guilty plea and his sworn statement during the providence inquiry as evidence of his guilt.

Due to the constitutional dimensions of trial counsel's error, we test for harmless beyond a reasonable doubt. The Government argues that the error was harmless beyond a reasonable doubt due to the presumption that the military judges are presumed to know the law and follow it absent clear evidence to the contrary. Specifically, the Government argues that there is no evidence that trial counsel's reference to Appellant's guilty pleas caused the military judge to use the guilty pleas for an improper purpose.

In *United States v. Hukill*, 76 M.J. 219, 220 (C.A.A.F. 2017), we held that whether considered by members or a military judge, evidence of a charged offense, of which an accused is presumed innocent, cannot be used as propensity evidence in support of a companion charged offense. Because there were constitutional dimensions at play, the erroneous admittance of evidence was tested for prejudice under the harmless beyond a reasonable doubt standard. *Id.* at 222. In that case, like the instant case, the government argued "that the error was harmless beyond a reasonable doubt due to the presumption that military judges are presumed to know the law and follow it absent clear evidence to the contrary." *Id.* However, the presumption was not helpful to the government in *Hukill* because the common understanding of the law was that charged misconduct could be used as propensity evidence. *Id.* We cautioned that "[t]he presumption that the military judge knows and follows the law is only as valid as the law itself." *Id.* at 223.

Unlike in *Hukill*, here there is no indication that the military judge misunderstood the law. *Flores* clearly prohibited the type of arguments made by trial counsel. Nothing in the record suggests the military judge was unaware of *Flores* or unwilling to follow it. Although trial counsel made various misstatements, we cannot presume the military judge adopted trial counsel's view of the law. There is no evidence of error on the part of the military judge, to whom the presumption attaches. In fact, the military judge's mixed findings on the contested sexual

assault offenses suggest that the military judge thoroughly analyzed the evidence for each offense.

We hold that the presumption that the military judge knew and correctly followed the law was not rebutted in this case by the military judge's silence in a military judge-alone trial. The misstatements by the trial counsel are not imputed to the military judge, absent evidence the military judge adopted the rationale of the misstatements. Accordingly, there is no reasonable possibility that the error might have contributed to Appellant's conviction.

### III. Judgment

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, with whom Judge JOHNSON joins, concurring in the judgment.

For the reasons cited below, I concur in the judgment of the Court.[1]

### Issue I: Ineffective Assistance of Counsel

The first granted issue asks "[w]hether trial defense counsel were ineffective for, inter alia, allowing the military judge to consider Appellant's guilty plea when determining whether Appellant was guilty of the litigated offenses." *United States v. Leipart*, 83 M.J. 448 (C.A.A.F. 2023) (order granting review). As can be seen, the language of this granted issue squarely focuses on whether defense counsel erred by "allowing" the military judge to "consider" during the contested phase of the court-martial proceedings the admissions Appellant previously had made during the providence inquiry. And yet, Appellant now seeks to argue that trial defense counsel were also ineffective because they failed to object to trial counsel's slides during findings argument and failed to object to trial counsel's "clearly improper" findings argument. As is evident, however, the latter two arguments are outside the scope of the granted issue.

In order to ensure that a claim of error lies within the scope of an issue, an appellant must raise it with a reasonable degree of specificity based on the wording of that issue. Any notion that the phrase "inter alia"—which Appellant inserted into the issue statement—necessarily serves to later open the door to other, unreferenced arguments is mistaken. And in the instant case, there is no reason for this Court to exercise its discretion and consider the additional two arguments raised by Appellant. *See, e.g.*, *United States v. Pyron*, 83 M.J. 59, 63 n.2 (C.A.A.F. 2023) (declining to "weigh in on [a] matter" outside of the scope of the granted issue). Accordingly, only Appellant's argument pertaining to the effect his prior guilty pleas had on the contested charges merits our review.

Upon engaging in an analysis of the issue presented, a preliminary point must be addressed. Specifically, the

---

[1] I adopt the facts as laid out by the majority opinion.

language of Issue I asserts that trial defense counsel allowed the military judge to "consider" Appellant's prior guilty pleas. However, during the exchange between civilian defense counsel and the military judge, the issue was whether the military judge—in his role as the factfinder for the contested charges—should be deemed "*aware of*" the prior guilty pleas:

> [Military Trial Judge (MJ2)]: But you had mentioned in your opening statement about the mixed pleas, the guilty pleas, and one of the questions I was going to ask you, regardless of that, is your position—from the defense team—on consideration, or the fact-finder being *aware* that there has been previous guilty pleas? . . .

> [Civilian Defense Counsel (CivDC1)]: . . . I wasn't necessarily asking you to, as the factfinder, to necessarily consider that mixed plea. . . .

> . . . .

> MJ2: So we're operating in a world where I'm *aware* of the previous guilty pleas?

> CivDC1: Of course, sir; yes.

> MJ2: . . . [E]ven as the factfinder. . . .

> . . . .

> MJ2: . . . I'm *aware of* it.

(Emphasis added.) This point is not a mere matter of technical precision. If the military judge had used the word "consider," Appellant perhaps would have a stronger argument that civilian trial counsel was authorizing—and even encouraging—the military judge to use the facts elicited during the providence inquiry when deciding whether the elements of the contested offenses had been met. That approach would be a matter of grave concern. *Compare United States v. Flores*, 69 M.J. 366, 368 (C.A.A.F. 2011) ("[A] military judge who has advised an accused that she is waiving her right against self-incrimination only to those offenses to which she is pleading guilty cannot later rely on those statements as proof of a separate offense."), *with United States v. Kaiser*, 58 M.J. 146, 148-49 (C.A.A.F. 2003) (stating the factfinder should not be notified of an accused's guilty pleas "[i]n the absence of a specific request by the

accused"), *and United States v. Rivera*, 23 M.J. 89, 96 (C.M.A. 1986) (same), *and* R.C.M. 913(a) Discussion (2016 ed.) (same).

I concede that this point is complicated by the *DuBay*[2] military judge's finding which conspicuously uses the word "consider" rather than the phrase "aware of." But, as indicated above, the actual record of trial is clear on this point and the contemporaneous record is the preferred source for determining what civilian defense counsel's position was at the time of trial and what the military judge's state of mind was at the time of findings. Moreover, the United States Air Force Court of Criminal Appeals (CCA) made a finding that supersedes the finding of the *DuBay* military judge. Namely, the CCA made a factual finding that "the trial judge indicated that he would be 'aware' of the guilty plea, not that he would consider or use the guilty plea during his deliberations on findings." *United States v. Leipart*, No. ACM 39711, Misc. Dkt. No. 2021-03, 2023 CCA LEXIS 39, at *34, 2023 WL 415990, at *11 (A.F. Ct. Crim. App. Jan. 26, 2023) (unpublished). This finding by the CCA is not clearly erroneous and thus controls. *See United States v. Tollinchi*, 54 M.J. 80, 82 (C.A.A.F. 2000) ("We will not overturn findings of fact by a Court of Criminal Appeals unless they are clearly erroneous or unsupported by the record.").

Turning to the gravamen of the granted issue, this Court "recognize[s] that trial defense counsel's performance is presumed to be competent." *United States v. Harpole*, 77 M.J. 231, 237 (C.A.A.F. 2018). An appellant may overcome this presumption if he satisfies his burden by first demonstrating that his allegation about his counsel's conduct is accurate and, if so, by then showing that "there [is no] reasonable explanation for counsel's actions" and these actions "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers." *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (second and third alterations in original) (internal quotation marks omitted) (quoting *United States v. Polk*, 32 M.J. 150, 153

---

[2] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

(C.M.A.1991)). For the reasons stated below, I conclude that Appellant cannot succeed on his ineffective assistance of counsel claim because there was a "reasonable explanation" for counsel's decision to make the military judge, as the factfinder, "aware of" Appellant's guilty pleas, such that the civilian defense counsel's performance was not deficient. Therefore, no further analysis of this issue is required. *See United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (indicating that ineffective assistance of counsel claims can be disposed of based on the deficient performance prong).

At the outset of my analysis, I acknowledge that civilian defense counsel (1) did not place specified limitations on how the military judge should employ his awareness of Appellant's prior guilty pleas; (2) conceded in his *DuBay* testimony that upon reflection he "probably" would not have taken the same approach; and (3) did not consult with other counsel—or with Appellant—before asking the military judge to be aware of the guilty pleas. However, these three points do not warrant a finding of deficient performance.

In regard to the first point, there is no indication in the record that civilian defense counsel erroneously intended for the military judge to consider Appellant's admissions during the providence inquiry as evidence supporting an element of the contested charges. Instead, counsel only asked the military judge to be "aware of" Appellant's guilty pleas. Importantly, civilian defense counsel had no reason to believe that the military judge would use his "awareness of" the prior guilty pleas in an improper manner. Indeed, the counsel knew that the military judge seemed meticulously mindful of his distinct role during each phase of the proceedings. Therefore, the civilian defense counsel was not required to place specified limitations on how the military judge should employ his awareness of Appellant's prior guilty pleas.

In regard to the second point, the mere fact that civilian defense counsel subsequently questioned whether he should have taken this approach at trial carries very little weight in an ineffective assistance of counsel context. The full benefit of hindsight, whereby counsel now knows that

his trial strategy was unsuccessful, can affect perceptions. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) ("We are not to assess counsel's actions through the distortion of hindsight . . . .").

And in regard to the third point, there is some indication in the record that the two civilian defense counsel had at least briefly conferred about this general topic. But regardless, Appellant has not cited any statute or case law that requires one counsel who is arguing a point to obtain the agreement of fellow counsel about how best to proceed. Moreover, Appellant cannot prevail solely because civilian defense counsel failed to consult with Appellant himself before counsel took the approach now at issue in this appeal. Simply stated, Appellant's constitutional right to silence was not at issue in this case. That is because civilian defense counsel did not advocate for any statements made by Appellant during the providence inquiry to be used against Appellant as evidence of guilt. Moreover, there is no evidence in the record that the military judge improperly used these statements in that manner. Therefore, the decision to pursue the "awareness approach" rested within the sound discretion of defense counsel and Appellant's acquiescence was not required. *See McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (contrasting between the decisions that are "the lawyer's province" and those an accused must personally make, including "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, . . . forgo an appeal," and "[a]utonomy to decide that the objective of the defense is to assert innocence"); *see also Rivera*, 23 M.J. at 96 ("[A] military judge certainly should not presume that an accused is willing to have this potentially damaging information as to a guilty plea brought to the members' attention unless, in fact, the accused *or his counsel* has given some specific indication to this effect." (emphasis added)).

The key question then is whether civilian defense counsel had a reasonable explanation for his actions at the time of trial such that counsel's conduct was not deficient. I conclude that he did. To begin with, the record before us indicates that civilian defense counsel concluded that this particular military judge would properly handle his "awareness of" the prior guilty pleas. Next, by acknowledging the obvious and being reasonable in his approach, civilian defense counsel wanted to cultivate "goodwill" with the military judge which would redound to the benefit of his client. *See Rivera*, 23 M.J. at 96 (discussing one rationale for an accused to inform the factfinder of his guilty pleas was to prevent the factfinder from feeling "duped"). And finally, it was "reasonable" for civilian defense counsel to take the tack of arguing that Appellant had demonstrated through the prior guilty pleas that he was willing to accept responsibility for those offenses which he actually committed, and that he was pleading not guilty to the remaining offenses because he was, in fact, innocent of those charges. *See id.* at 95-96 (discussing another rationale to inform the factfinder of an accused's guilty pleas as "counsel wish[ing] to argue that the accused was perfectly willing to plead guilty to the crimes of which he, in fact, was guilty, but that he has pleaded not guilty to the remaining charges because he is innocent thereof").

For all these reasons, I conclude that there was no ineffective assistance of counsel in this case.

### Issue II: Improper Argument

The second granted issue asks "[w]hether the trial counsel's 'clear error' in findings argument—leveraging Appellant's guilty plea to prove his guilt of the litigated offenses—was harmless beyond a reasonable doubt." *Leipart*, 83 M.J. at 448. Consistent with the phrasing of this issue statement, I conclude that trial counsel did indeed commit clear error when he used Appellant's admissions during the providence inquiry to argue that Appellant was guilty of the contested charges.

Civilian defense counsel's decision to have the military judge be aware of the prior guilty pleas did not extend to authorizing the military judge to use those guilty pleas and

6

related admissions as evidence of Appellant's guilt to the other offenses. And yet, trial counsel argued during findings that "the [G]overnment believes [the military judge should] use [Appellant's guilty pleas] in assessing [the victim's] credibility on the stand."[3] If the military judge had used the guilty plea inquiry in this manner, it would have violated Appellant's presumption of innocence as well as his Fifth Amendment right against self-incrimination. *See Flores*, 69 M.J. at 369-70 (To "later rely on [the providence inquiry] statements as proof of a separate offense . . . would compel an accused to incriminate [himself] in the separate criminal proceeding." (citation omitted)); *Kaiser*, 58 M.J. at 150 (notifying the factfinder of guilty pleas "implicates the presumption of innocence"). Thus, the trial counsel's conduct constituted "clear error." *See Flores*, 69 M.J. at 370 (stating that "the direct reference made by trial counsel to a statement made by [the accused] at the providence inquiry" was error that was "plain and obvious").

Because this type of error is of constitutional magnitude, the Government bears the burden in the plain error context of demonstrating that the error was harmless beyond a reasonable doubt. *See United States v. Palacios Cueto*, 82 M.J. 323, 334 (C.A.A.F. 2022) (citing *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019)).[4] In evaluating prejudice, this Court considers such factors as " '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, . . . (3) the weight of the evidence supporting the conviction,' " *Andrews*, 77 M.J. at

---

[3] For instance, trial counsel implicated Appellant's guilty pleas when counsel said that the military judge "kn[e]w for a fact [the victim was] telling the truth about X, Y, and Z. So that increases her credibility automatically." (Internal quotation marks omitted.)

[4] The Government argues that *Tovarchavez* should be overruled. In my view, the Government did not meet its "substantial burden of persuasion" to overrule this case because it failed to evaluate each stare decisis factor. *United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) (citation omitted) (internal quotation marks omitted).

402 (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)), and (4) "the lack of defense objection," *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999).

Although I view it as a close call, I conclude that the Government has met its burden when evaluating these factors. In terms of the first factor, I note that trial counsel's conduct was only moderately severe because the reason for the erroneous reference to Appellant's guilty pleas originated from civilian defense counsel's request that the military judge be "aware of" the pleas, which apparently was somewhat confusing for all of the participants.[5] In terms of the third factor, the evidence in support of the convictions was not particularly compelling. *See Leipart*, 2023 CCA LEXIS 39, at \*74, 2023 WL 415990, at \*24 (stating "the evidence in favor of conviction was not overwhelming").

---

[5] The Government contends that this confusion invited trial counsel's response during findings argument such that there was no plain error. Indeed, this Court has recognized: "[T]he Government is permitted to make 'a fair response' to claims made by the defense, even when a Fifth Amendment right is at stake." *United States v. Gilley*, 56 M.J. 113, 120 (C.A.A.F. 2001) (quoting *United States v. Robinson*, 485 U.S. 25, 32 (1988)). "Under the 'invited response' or 'invited reply' doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citations omitted); *Gilley*, 56 M.J. at 121 ("In reviewing whether an appellant was deprived of a fair trial by such comments, the question an appellate court must resolve is whether, viewed within the context of the entire trial, . . . defense counsel's comments 'clearly invited the reply.'" (citation omitted)). Here, the Government claims that the defense opened the door to trial counsel's use of the providence inquiry and guilty pleas by referring to them in the opening statement, asking the military judge to be aware of them, and by cross-examining the victim on her statements that formed the basis for the guilty plea offenses in order to challenge her credibility. Viewed in context, the Government contends that trial counsel's use of the providence inquiry statements and guilty pleas to rehabilitate the victim's credibility was a fair response to the defense's strategic use of the evidence. While the Government makes some strong points, I choose to resolve this issue on other grounds.

Thus, this factor weighs in favor of Appellant. And in terms of the fourth factor, Appellant's trial defense counsel did not object to trial counsel's erroneous argument, which "is 'some measure of the minimal impact' of a prosecutor's improper comment." *Carpenter*, 51 M.J. at 397 (quoting *United States v. Nelson*, 1 M.J. 235, 238 n.6 (C.M.A. 1975)).

The key to the resolution of this issue therefore lies with the second factor. It must be noted, however, that in military judge-alone trials, the question of whether any measures were adopted to cure the misconduct "adds little to the [prejudice] analysis." *United States v. Erickson*, 65 M.J. 221, 224 (C.A.A.F. 2007). Of course, this Court has often stated that "[m]ilitary judges are presumed to know the law[,] . . . to follow it absent clear evidence to the contrary," and "to distinguish between proper and improper . . . arguments." *Id.* at 225. Nevertheless, the presumption that a military judge knows the law is not dispositive of the prejudice issue in a case such as this one. Instead, the fact that there was a bench trial merely serves as an additional point to weigh in the course of assessing the issue of prejudice. *See id.* at 224-25.[6]

The record causes me to conclude that it is appropriate in this case to invoke the presumption that the military judge knew the law and followed it. And as a result, I presume that the military judge was able to distinguish

---

[6] In the court-martial panel context, there is a presumption that members follow military judges' instructions. *United States v. Norwood*, 81 M.J. 12, 20 (C.A.A.F. 2021). Importantly, however, this Court has acknowledged that a trial counsel's conduct may be "so prejudicial that the curative instructions were inadequate." *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974) (observing that "some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect"); *United States v. Crutchfield*, 26 F.3d 1098, 1103 (11th Cir. 1994) ("When [prosecutorial misconduct] permeate[s] a trial to such a degree as occurred in this case, we do not believe that instructions from the bench are sufficient to offset the certain prejudicial effect suffered by the accused."). As *Erickson*, 65 M.J. at 224, demonstrates, this same exception applies to the presumption that miliary judges follow the law.

between proper and improper argument here, and thus, contrary to trial counsel's clearly erroneous argument, did not use Appellant's statements during the providence inquiry as evidence to prove any element of the contested offenses. *See id.* at 225.

In support of this position, I note that the military judge made it repeatedly clear on the record that he was only going to deem himself "aware of" the prior guilty pleas. He never said that he would "consider" those pleas in the course of the contested proceedings. Further, there is no evidence in the record that the military judge was confused or mistaken about the practical application of Appellant's Fifth Amendment rights in this context. And finally, the fact that the military judge found Appellant *not* guilty of certain offenses demonstrates that he did not adopt the trial counsel's expansive argument that because Appellant's own words during the providence inquiry verified the victim's credibility, the victim must automatically be believed in regard to all of her allegations. *See United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017) ("The panel's mixed findings further reassure us that the members weighed the evidence at trial and independently assessed Appellant's guilt without regard to trial counsel's arguments.").

When weighing these various factors for evaluating prejudice, the presumption that the military judge knew and applied the law tips the scale in the Government's favor. Accordingly, I conclude that the Government has demonstrated that the trial counsel's clear error during findings argument was harmless beyond a reasonable doubt.

## Conclusion

As the discussion above demonstrates, I believe that Appellant cannot prevail on either of the granted issues, and therefore I would affirm the decision of the United States Air Force Court of Criminal Appeals. Because the majority opinion reaches the same result, I concur in the judgment.